Heath WHITESIDE, Appellant,

v.

STATE of Texas, Appellee.

No. 13–87–101–CR.

Court of Appeals of Texas,
Corpus Christi.

June 30, 1988.

Rehearing Denied Aug. 31, 1988.

Alfredo Jimenez, Corpus Christi, for appellant.

Grant Jones, Corpus Christi, for appellee.

Before NYE, C.J., and DORSEY, and BENAVIDES, JJ.

## OPINION

DORSEY, Justice.

A jury convicted appellant, Heath Whiteside, of attempted capital murder and assessed punishment at 45 years' imprisonment. Overruling appellant's two points of error, we affirm the judgment of the trial court.

On October 12, 1986, police officer Robert Cooper was on routine patrol at the Port Aransas beach. He was dressed in full uniform and was driving in a clearly marked police car equipped with overhead lights. At approximately 4:30 a.m., Cooper spotted a white Ford Mustang traveling at a high rate of speed along a portion of the beach where the speed limit was 15 miles per hour. The Mustang stopped, spun around in a "donut" formation several times, and continued traveling in a northern direction.

Cooper began his pursuit after turning on his warning lights and siren, but the driver of the Mustang did not pull over. A high-speed chase ensued until the Mustang finally came to a stop after getting stuck in sand dunes. Cooper pulled his vehicle up alongside the Mustang, got out of his car, and drew his revolver. He told the driver to "freeze" and to place both his hands on the steering wheel. Cooper then stepped back towards the rear of the Mustang and waited for "back-ups" to arrive.

After a few seconds, appellant pulled up behind the two cars in a white Toyota. Cooper glanced at appellant, then turned his attention back to the driver of the Mustang. At that point, appellant drew a gun and shot Cooper three times in the back, causing the officer to fall to the ground. Appellant fired two more shots which struck the sand. Cooper began returning fire as appellant drove his car away from the scene in a southern direction along the beach. Cooper then made his way to his car where he radioed for an ambulance. As he did so, the driver of the Mustang leaned out of the window of that car and fired a shot which struck Cooper in the lower back and knocked him down. Cooper got up and told the driver to "freeze." When he failed to do so, Cooper shot him three times in the leg.

Back-up units then arrived, and the driver of the Mustang, later identified as appellant's brother, Terry Whiteside, was apprehended at the scene. Appellant was arrested several hours later after an extensive search.

By his first point of error, appellant asserts the trial court erred in admitting evidence of prior convictions during the State's case-in-chief. The complained-of testimony established that appellant was currently on probation for felony theft and burglary of a vehicle.

Before calling probation officer Kathy Meyers to the stand, the State requested a hearing outside the presence of the jury. The prosecutor told the court that he wanted to elicit Meyers' testimony in order to show that 1) appellant violated his probationary terms by coming to Nueces County, and 2) appellant's motive for shooting the officer was to prevent apprehension and the possible revocation of his probation. Appellant's counsel opposed the introduction of the evidence. The court allowed the testimony after noting appellant's objection.

During re-direct examination of Meyers, the State offered certified copies of the indictments and judgments against appellant for the theft and burglary offenses. Appellant's counsel recited "no objection" to the documents when they were offered.

■ Before we can reach the merits of appellant's first point of error, that the admission into evidence of extraneous offenses caused reversible error, we must first determine if the right to complain of the evidence on appeal has been preserved. Generally, it is not necessary to renew an objection to evidence before a jury when the objection to the proffered evidence has been made outside the jury's presence and overruled. *Livingston v. State*, 739 S.W. 2d 311, 334 (Tex.Crim.App.1987). Thus it was not necessary for appellant to renew his objection to Myer's testimony before the jury. However, when the certified copies of the indictments and judgments of conviction were offered, Exhibits 25, 26A and 26B, appellant affirmatively stated, "no objection."

When the appellant affirmatively states "no objection" to evidence to which he is not required to object under *Livingston*, he waives his previous objection and cannot complain of it on appeal. *Dean v. State*, 749 S.W.2d 80 (Tex.Crim.App.1988); *Harris v. State*, 656 S.W.2d 481, 484–85 (Tex. Crim.App.1983), *cited in Maynard v. State*, 685 S.W.2d 60, 65 n. 3 (Tex.Crim. App.1985); *cf. Graves v. State*, 513 S.W.2d 57 (Tex.Crim.App.1974). As State's Exhibits 25, 26A, and 26B were certified copies of appellant's prior indictments and convictions, and thus constituted the same evidence that Meyers testified about, we hold that the rule of *Dean* and *Harris* compels the conclusion that the affirmative assertion of "no objection" waives the preservation of the objection to appellant's prior convictions.

Appellant's first point of error is overruled.

■ By his second point, appellant argues the trial court erred in failing to include in the charge his requested issue on defense of a third person.

A defendant is entitled upon timely request to an instruction on every defense which is raised by the evidence, regardless of whether the evidence supporting the defensive theory is contradicted. *Smith v. State*, 676 S.W.2d 584, 586–87 (Tex.Crim. App.1984); *Lugo v. State*, 667 S.W.2d 144, 146 (Tex.Crim.App.1984).

Tex.Penal Code § 9.33 (Vernon 1974) provides:

A person is justified in using force or deadly force against another to protect a third person if:

(1) under the circumstances as the actor reasonably believes them to be, *the actor would be justified under Section 9.31 or 9.32 of this code in using force or deadly force to protect himself* against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and

(2) the actor reasonably believes that his intervention is immediately necessary to protect the third person. (emphasis ours).

Section 9.31 reads in pertinent part:

#### Self–Defense

(a) Except as provided in Subsection (b) of this section, a person is justified in

using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

(b) The use of force against another is not justified:

\* \* \* \* \* \*

(2) to resist an arrest or search that the actor knows is being made by a peace officer, or by a person acting in a peace officer's presence and at his direction, even though the arrest or search is unlawful, unless the resistance is justified under Subsection (c) of this section;

\* \* \* \* \* \*

(c) The use of force to resist an arrest or search is justified:

(1) if, before the actor offers any resistance, *the peace officer* (or person acting at his direction) *uses or attempts to use greater force than necessary to make the arrest or search;* and

(2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's (or other person's) use or attempted use of greater force than necessary. (emphasis ours).

Hence, in order for appellant to be entitled to his requested issue, there must be some evidence suggesting that appellant would have been justified in shooting officer Cooper had he been in his brother's position. Under Section 9.31(c)(1), appellant was required to make a preliminary showing that Cooper used or attempted to use "greater force than necessary to make the arrest."

At trial, Terry Whiteside, appellant's brother, testified that Cooper pointed his .357 Magnum at him and yelled "Put your hands where I can see them." Whiteside placed his hands on the steering wheel and responded "They're right here." Cooper repeated his request three more times. Whiteside then saw appellant's car drive up and, several seconds later, he heard gunshots.

Appellant testified on cross-examination as follows:

Q  All right.  Now, you saw the officer park his car up against the door. The door, so your brother couldn't get out, right, You saw that?

A  Yes, sir.

Q  You saw the officer get out and draw his gun?

A  Yes, sir.

\* \* \* \* \* \*

Q  Now, at that point, did you feel like that that officer was acting reasonably under the circumstances?

A  At that very moment he was acting reasonably.  He was doing his duty at that moment.

Q  If you had been a policeman with the same circumstances on duty at 4:30 in the morning patrolling a rather unpopulated, desolate area out there on the beach, and I had tried to stop a car who had taken off running from me and you were in a patrol car by yourself with no back-up, if you had been a police officer, would you have done the same thing?

A  Yes, sir.

\* \* \* \* \* \*

Q  Well, if you're out driving on the city anywhere, a city street and you're driving down a street and you see a uniform policeman standing next to a marked police car holding a gun on someone, do you think you've got a right to shoot the police officer?

A  Not if the circumstances are under control.  No, sir.

Q  Tell me in your mind what it takes to show that the circumstances are not under control?

A  The officer was very nervous.  He was scared.  There was hollering.

\* \* \* \* \* \*

Q  Tell me again.  Tell the jury again what it was that caused you to think that your brother was going to be shot.

A  The officer appeared very nervous and he looked scared.  and he pulled his gun off aim to look back.  And he jerked back like he was taking aim.

This appeared to me that he was going to shoot my brother and jump around the front of his car.

Looking at the facts from appellant's viewpoint, we cannot conclude that appellant made a showing of excessive force by Officer Cooper as required by Section 9.31(c)(1) of the Penal Code. Although Cooper brandished a weapon, thereby threatening his suspect with the use of force, the evidence does not reflect that the officer fired his gun or made physical contact with Terry Whiteside until after he had been shot several times.

Appellant infers in his brief that it is unjust to require him to await the actual use or attempted use of excessive force by an officer before defending another from such force. However, the limitation of the right of self-defense (or defense of a third person) against an unlawful arrest as set out in Section 9.31(c) is a reasonable and legitimate exercise of police power. *Ford v. State*, 538 S.W.2d 633, 636 (Tex.Crim. App.1976); *Salinas v. State*, 687 S.W.2d 67, 68 (Tex.App.—Corpus Christi 1985, no pet.). As stated by the Court in *Ford*, 538 S.W.2d at 635, in a discussion of the statutory limitation on the common law right to resist any unlawful arrest:

> This reflects a growing realization that the use of self-help to prevent an unlawful arrest presents too great a threat to the safety of individuals and society to be sanctioned. The line between an illegal and legal arrest is too fine to be determined in a street confrontation; it is a question to be decided by the courts.

Similarly, one may not presume that the threatened use of force by a law officer will become more than a threat or that the use of force will be excessive. Such matters are best left to the reasoned discourse of a court rather than a confrontation on the street. Point of error two is overruled.

The judgment of the trial court is AFFIRMED.