Nathaniel Gibson WALKER, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–97–01157–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

April 1, 1999.

Discretionary Review Refused
Sept. 8, 1999.

**200**

David Cunningham, Houston, for Appellant.

John B. Holmes, S. Elaine Roch, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices O'CONNOR and TAFT.

## OPINION

SCHNEIDER, Chief Justice.

A jury found appellant, Nathaniel Gibson Walker, guilty of aggravated assault of a public servant. The jury also found two enhancements true and assessed punishment at 50 years confinement. We affirm.

## FACTS

On July 7, 1996, Houston Police Officers LaMunion and Matthews were on patrol when a yellow Cadillac passed through an intersection near them and caught their attention. The car was traveling 50 miles per hour in a 30–mile–per–hour zone. LaMunion could not identify anyone in the car as it sped by.

LaMunion and Matthews gave chase. The Cadillac made a wide right hand turn without signaling and came to a sudden stop. The driver bailed out of the car and began running between houses. It appeared as if the driver was carrying something above his waist, but LaMunion could not tell what it was. LaMunion did not see anyone else get out of the car, but photos taken at the scene showed three open car doors. Witnesses at the scene saw four people running from the car.

LaMunion stopped behind the car, and Matthews got out to give chase to the individual that the police had seen get out of the car. Matthews, like LaMunion, saw the person carrying something near his body, but was unable to identify the object. The person they were chasing was wearing white pants and a white t-shirt.

Matthews chased the suspect between several houses and into the street. During the chase, Matthews drew his gun. After losing sight of Matthews and the suspect, LaMunion headed down a nearby street in the patrol car. He soon saw someone running with Matthews in pursuit. LaMunion caught up to the suspect, and Matthews, pulled ahead of them to cut off the escape route, and stopped his patrol car.

About the same time LaMunion stopped the car, the suspect stumbled. Matthews announced himself as a police officer and told the suspect to stay on the ground. At this point, Matthews drew his weapon. The suspect disregarded Matthews's order and started to run again. As the suspect started to run, Matthews saw three muzzle flashes near the suspect's body and heard a gunshot. Matthews was shot in the left wrist as he attempted to fire his own weapon. After a short delay, there was a fourth shot. Matthews identified appellant as the suspect who shot him.

Once help arrived for Matthews, La-Munion joined in the search for appellant. He was found underneath a house five or six minutes later. When he was removed from underneath the building, he was wearing only his shoes and white pants. His shirt was found under the house.

Several hours later, a gun was discovered under the house next door to where appellant was arrested. The gun was later determined to have fired the bullet that hit Matthews. The keys to the yellow Cadillac were found nearby, and appellant's fingerprints were found on the Cadillac.

## LESSER INCLUDED OFFENSE

■ Appellant was originally indicted for attempted capital murder of a peace officer. After hearing the evidence, the trial court *sua sponte* included a jury instruction on aggravated assault of a public servant. In points of error one and two, appellant contends the trial court erred in doing so. Aggravated assault is a lesser included offense of attempted capital murder. *Godsey v. State*, 719 S.W.2d 578, 584 (Tex.Crim.App.1986); *Monroe v. State*, 871 S.W.2d 801, 804 (Tex.App.—Houston [14th Dist.] 1994, no pet).

■ We reject appellant's assertion that aggravated assault is no longer a lesser included offense of attempted capital murder because the two offenses carry the same range of punishment. The determination of whether an offense is a lesser-included offense is made without regard to punishment; one offense may be a lesser-included offense of another even if it carries the same penalty. *Johnson v. State*, 828 S.W.2d 511, 515 (Tex.App.—Waco 1992, pet. ref'd); *Stockton v. State*, 756 S.W.2d 873, 876 (Tex.App.—Austin 1988, no pet.).

Because aggravated assault is a lesser included offense of attempted capital murder, appellant cannot complain that he was tried or convicted of the lesser offense. *Williams v. State*, 170 Tex.Crim. 593, 342 S.W.2d 581, 582 (1960); *Mello v. State*, 806 S.W.2d 875, 877 (Tex.App.—Eastland 1991, pet. ref'd).

We overrule points of error one and two.

## SELF DEFENSE

■ In points of error three and four, appellant contends that the trial court erred by refusing to charge the jury on self-defense. A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence be strong, feeble, unimpeached, or contradicted. *Courtney v. State*, 908 S.W.2d 48, 52 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd); *Bynum v. State*, 874 S.W.2d 903, 907 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). Appellant ar-

gues that the issue of self-defense was raised because there was some evidence that tended to show that appellant was merely trying to disarm the police officer when he shot him.

However, the right to use self-defense against a police officer who is attempting to effect an arrest is limited by section 9.31 of the Penal Code, which provides:

> The use of force against another is not justified . . . to resist an arrest or search that the actor knows is being made by a peace officer . . ., even though the arrest or search is unlawful, unless the resistance is justified under Subsection (c)
>
> \* \* \* \* \* \*
>
> The use of force to resist an arrest or search is justified:
>
> (1) if, before the actor offers any resistance, the peace officer . . . uses or attempts to use greater force than necessary to make the arrest or search; and
>
> (2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's . . . use or attempted us of greater force than necessary.

TEX. PENAL CODE ANN. § 9.31(b)(2), (c) (Vernon 1994 & Supp.1999).

Under this statute, appellant must show excessive force on the part of the police officer before the justification of self-defense would have been applicable. *Letson v. State*, 805 S.W.2d 801, 805 (Tex.App.— Houston [14th Dist.] 1990, no pet.). Thus, to be entitled to this instruction, there had to have been some evidence in the record to raise the issue of whether the police officer used or attempted to use excessive force in arresting appellant.

In *Whiteside v. State*, the police officer approached the defendant's brother's car, drew his weapon, and ordered the brother to "Put you hands where I can see them." 756 S.W.2d 765, 768 (Tex.App.—Corpus Christi 1988, pet. ref'd). The defendant drove up and fired three shots in the offi-

cer's back. *Id.* at 766. On appeal, the defendant argued that the trial judge erred by denying his instruction on defense of a third party. Id. at 767. The court held that even though the police officer "brandished a weapon," there was no showing of excessive force, and the defendant was not entitled to an instruction on his right to use force. *Id.* at 769. In so holding, the court stated, "[O]ne may not presume that the threatened use of force by a law officer will become more than a threat or that the use of force will be excessive." *Id.*

The evidence in this case shows that Officer Matthews chased appellant, and when appellant stumbled and fell, the police officer drew his weapon and ordered appellant to stay down on the ground. In response, appellant got to his feet and started running. Officer Matthews saw three bright muzzle flashes coming from the right side of appellant's body, and then realized that he had been shot in the wrist. There is simply nothing in the record to raise the issue of excessive force. Although Officer Matthews drew his weapon, he did not use it. Appellant, like the defendant in *Whiteside*, is not entitled to assume that Officer Matthews's threatened use of force would have escalated to an excessive use of force. *See also Evans v. State*, 876 S.W.2d 459, 464 (Tex.App.— Texarkana 1994, no pet.) (touching of weapon and calling for back-up did not constitute a use of force). Because there was no showing that Officer Matthews used any force, much less excessive force, the issue of appellant's right to respond with force was not raised.

We overrule points of error three and four.

### DEADLY CONDUCT

 In points of error five and six, appellant contends the trial court erred by refusing his requested jury instruction on the lesser included offense of deadly conduct. Deadly conduct is a lesser included

offense of attempted capital murder. *See Godsey v. State,* 719 S.W.2d 578, 584 (Tex. Crim.App.1986). However, before a charge on a lesser included offense is warranted, there must be some evidence in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser offense. *Bignall v. State,* 887 S.W.2d 21, 23 (Tex.Crim. App.1994); *Rousseau v. State,* 855 S.W.2d 666, 672 (Tex.Crim.App.1993); *Jones v. State,* 921 S.W.2d 361, 364 (Tex.App.— Houston [1st Dist.] 1996, pet. ref'd).

The difference between attempted capital murder and deadly conduct is in the necessary culpable mental state. A person commits the offense of deadly conduct if he recklessly engages in conduct that places another in imminent danger of serious bodily injury. TEX. PENAL CODE ANN. § 22.05 (Vernon 1994). Deadly conduct requires that the accused be aware of, but consciously disregards, a substantial and justifiable risk that the circumstances exist or the result will occur. TEX. PENAL CODE ANN. § 6.03 (Vernon 1994).

■ Appellant argues that a submission on deadly conduct was warranted because there was evidence that the defendant was "merely discharging the weapon in a threatening manner without the intent to kill." We disagree. Section 22.05 of the Texas Penal Code covers intent that falls short of harming another: that is, although no physical harm results, the acts are highly dangerous. *Ramirez v. State,* 976 S.W.2d 219, 227 (Tex.App.—El Paso 1998, pet. ref'd); *Mares v. State,* 903 S.W.2d 419, 422 (Tex.App.—Eastland 1995, pet. ref'd). If injury actually occurs from appellant's deliberate conduct, the act of shooting towards the victim constitutes more than deadly conduct. *Ramirez,* 976 S.W.2d at 227.

We are not holding that all shootings resulting in injury are greater than deadly conduct. To the contrary, *accidental* shootings that cause injury, if found to have been done recklessly, have been held to be deadly conduct. *See Hayes v. State,* 728 S.W.2d 804, 809–10 (Tex.Crim.App. 1987) (charge on reckless conduct necessary where evidence showed that gun might have accidentally gone off during struggle).

However, in this case the evidence shows that, while trying to evade arrest, appellant turned toward the police officer, and three muzzle flashes were seen near appellant's body. The officer was immediately struck in the wrist by a bullet. There is nothing in the record to indicate that appellant was merely trying to scare the officer, but not injure him. Similarly, there is nothing in the record to suggest that appellant's weapon discharged accidentally. All of the evidence indicates that appellant deliberately fired at the officer, either with the intent of killing him or disarming him by shooting him in the arm. In either case, the act went further than the mere act of placing another in imminent danger of serious bodily injury. Therefore, no issue of deadly conduct was raised. *See Ramirez,* 976 S.W.2d at 227 (deadly conduct not raised by evidence of intentional shooting that caused death of victim).

We overrule points of error five and six.

### READING BACK TESTIMONY TO THE JURY

■ In points of error seven and eight, appellant contends the trial court erred by reading back portions of the trial testimony to the jury without first determining whether the jury disagreed about the testimony.

### A. Did the trial court commit error under Article 36.28?

The Code of Criminal Procedure provides as follows:

> In the trial of a criminal case in a court of record, if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particu-

lar point in dispute, and no other; but if there be no such reporter, or if his notes cannot be read to the jury, the court may cause such witness to be again brought upon the stand and the judge shall direct him to repeat his testimony as to the point in dispute, and no other, as nearly as he can in the language used on the trial.

TEX. CODE CRIM. P. art. 36.28 (Vernon 1981).

There are two competing concerns giving rise to this statute. On the one hand, there is the concern that the trial court not comment on the weight of the evidence. *DeGraff v. State*, 962 S.W.2d 596, 598 (Tex. Crim.App.1998). On the other hand, there is the concern that the jurors have the means of resolving any factual disputes they might have. *Id.*

 Under Article 36.28, the jurors must disagree as to the testimony of a witness before the testimony may be read back to them. *Robison v. State*, 888 S.W.2d 473, 480 (Tex.Crim.App.1994); *Moore v. State*, 856 S.W.2d 502, 504 (Tex. App.—Houston [1st Dist.] 1993), *aff'd*, 874 S.W.2d 671 (Tex.Crim.App.1994). A simple request for testimony does not, by itself, reflect disagreement, implicit or express, and is not a proper request under article 36.28. *Robison*, 888 S.W.2d at 480; *Moore*, 874 S.W.2d at 673. However, the manner in which the trial court determines whether there is a factual dispute between the jurors is left to her sound discretion. *Robison*, 888 S.W.2d at 480.

On Friday, September 19, 1997, just before the jury was sworn, the trial judge instructed the jury as follows:

[I]f you send out a note saying you want the transcript, I'm going to have to tell you it's not available. And *testimony may be read back to you only if it's a dispute, and only that specific portion which is in dispute.* I tell you that you because it will be very important for you to listen to all of the testimony very

carefully. So I would urge you to do that.

Five days later, on September 24, 1997, during his closing argument, the prosecutor reiterated the requirement that there be a dispute among the jurors before testimony could be read.

So if you ask for the testimony of blank witness, you're not going to get a transcript back. The Judge is going to send you a note that asks you if there is a conflict about some testimony, who the witness is, who the lawyer was that was asking the question, and that kind of thing.

During deliberations, the jury sent out a note stating the following:

We need a TV/VCR in order to view the video tape. We would also like to review the following testimony:

(1) Description of the evidence, specifically which bullet matched the gun

(2) Description of Exhibit 36

(3) Officer Matthews' testimony of how the shooter held the gun during the first three shots

(4) Officer Matthews' testimony from the time the suspect fell to the time the shooting occurred.

Appellant's defense counsel objected to the read back, arguing that there was no indication that the jury was in disagreement about any testimony. The trial court responded that she had instructed the jury at the beginning of the proceeding that she could only read back testimony if the jury was in dispute, and that she would assume they were following her earlier instructions. The testimony was then read back to the jury.

The State, citing *Robison v. State*, 888 S.W.2d at 481 and *Meeks v. State*, 897 S.W.2d 950, 956 (Tex.App.—Fort Worth 1995, no pet.), argues that by considering the jury's request in conjunction with the trial court's earlier instruction, we can infer the jury was in disagreement. In *Robison*, the jury sent out a note requesting certain documents and/or testimony. 888

S.W.2d at 480. The trial court responded by instructing the jury there must first be a disagreement. *Id.* Twenty minutes later, the jury requested all written documents, and were given such documents. *Id .* The jury was further informed that if they wanted further testimony, they must specify the testimony in dispute. *Id.* The jury then requested a certain portion of cross-examination. *Id.* The Court of Criminal Appeals held that considering the requested testimony in conjunction with the earlier instructions of the Court, it was not unreasonable to infer a dispute among the jurors about the requested testimony. *Id.* at 481.

In *Meeks,* the jury asked for a copy of a certain witness's statement, and the trial court told the jury it could not comply with the request. 897 S.W.2d at 955. The jury then sent out a second note asking for the complainant's testimony. *Id.* The trial court instructed the jurors that they could have testimony read to them if they reported a disagreement and requested a specific portion of testimony. *Id.* at 955–56. The jury then sent out another note asking for a specific portion of the complainant's testimony. *Id.* at 956. The court held that even though the jury did not specify that it was in disagreement, its request, when considered with the trial court's earlier instructions, would give rise to an inference that it was in disagreement. *Id.*

We find *Robison* and *Meeks* distinguishable. In those cases, the trial court, in direct response to a request for a read back of testimony, instructed the jury it must first be in disagreement. When the juries continued to request testimony, the trial court inferred a disagreement. By contrast, in this case, five days before the jury sent out its note, the trial court, as part of its general instructions to the jury at the time it was sworn, told the jury that a read back would not be given unless there was a disagreement. At the time the jury requested the testimony, the trial judge did not inform them that a disagree-

ment was a prerequisite before the testimony could be reread. We do not believe that under these circumstances it is reasonable to infer the jury was in disagreement. Thus, the trial court erred by reading back the requested testimony.

### B. Was the error harmful?

Having decided that the trial court erred, we must now decide whether the error was harmful. The appellant contends that his "constitutional rights to due course of law" were violated when the trial court did not comply with article 36.28. Therefore, the appellant seems to urge this Court to conduct our harm analysis under Appellate Rule of Procedure 44.2(a) (constitutional error), rather than 44.2(b) (other errors). The appellant provides no support for this contention. The requirement that a trial judge first determine whether a jury disagrees about a witness's testimony before reading the testimony to the jury is not mandated in either our state or federal constitutions. This requirement is purely a creation of the legislature. Thus, the error did not constitute the denial of a constitutional right and a harm analysis under rule 44.2(a) is not required.

Rule 44.2(b) states: "Any other error ... that does not affect substantial rights must be disregarded." The Court of Criminal Appeals has interpreted "substantial right" as follows: "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim.App.1997), *citing with approval Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). In *Kotteakos,* the Supreme Court stated:

If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. But

if one cannot say, with fair assurance, after pondering all that [has] happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.

328 U.S. at 764–65, 66 S.Ct. at 1248 (citations omitted).

Appellant's primary defense in this case was that the police officers mistakenly identified him as the shooter. None of the testimony requested by the jury touched on this issue. The first item of requested testimony was about whether the gun that was recovered matched a fired casing and bullets that were also recovered. However, the real issue in this case was not whether the gun that was recovered was used in the offense, but whether appellant was the person who used it.

The second item requested was a description of the place from which the gun was recovered. (The gun was not found under the same house that appellant was found hiding under, but was found at the house next door.) Again, the issue in the case was not whether this gun recovered was used in the offense, but whether appellant was the person who used it.

The third and fourth items requested concerned testimony from Officer Matthews, the police officer who was shot, about (1) how the shooter held the weapon and (2) what happened during the interval between the time the suspect fell down and the time he shot at the police officer. Perhaps this evidence was relevant to whether an attempted murder or an aggravated assault occurred, but, because appellant was convicted of the lesser of those offenses, it is difficult to see how appellant was harmed. Also, we have already held that the issues of self-defense and deadly conduct were not raised, so the evidence could not have harmed appellant on these issues. Furthermore, like the two items of evidence discussed above, this testimony did not mention Officer Matthews's identification of appellant as the shooter.

In this case, Officers Matthews and LaMunion positively identified appellant as the man who shot Matthews. Another witness, Sheila King, testified about seeing a police officer chasing a man dressed in white. Appellant was discovered hiding under a house about five or six minutes after the shooting. He was wearing white pants and had taken off his white t-shirt. Considering the testimony that was read back to the jury in the context of the evidence as a whole, we cannot say that the trial court's error had a "substantial and injurious effect" on the jury's verdict.

Accordingly, we overrule points of error seven and eight.

We affirm the judgment.