TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00158-CR






Rachelle L. Howell, Appellant


v.


The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY

NO. 601,688, HONORABLE BILL BENDER, JUDGE PRESIDING





O P I N I O N




 Appellant Rachelle Lee Howell was charged with the offense of driving while
intoxicated (DWI), Tex. Pen. Code Ann. § 49.04 (West 2003), and convicted after a jury trial. In
three issues on appeal, Howell contends that the county court at law erred when it refused to allow
defense counsel to cross examine the arresting officer with a field sobriety test manual, allowed
testimony to be read back to the jury upon request, and overruled Howell's motion for new trial. 
Because we hold that the trial court's error in allowing testimony to be read back to the jury without
first determining that there was a disagreement among jury members was an abuse of discretion and
was harmful, we will reverse the judgment of the county court at law and remand for further
proceedings.


FACTUAL AND PROCEDURAL BACKGROUND


 On December 27, 2001, at 12:45 a.m., Officer Patrick Spradlin of the Austin Police
Department stopped appellant for speeding. Appellant admitted to having consumed two or three
drinks. Officer Spradlin administered a series of field sobriety tests, including the horizontal gaze
nystagmus test, the walk and turn test, the one leg stand, and the fingertip touch test. He determined
that appellant was intoxicated and arrested her.

 Appellant contended throughout her jury trial that she had passed her field sobriety
tests and referred the jury to the videotape of those tests. (1) The State then emphasized the horizontal
gaze nystagmus test, in which Officer Spradlin tracked appellant's eye movements for signs of
involuntary jerking enhanced by the effects of alcohol. In closing arguments, the State's attorney
argued, "Sometimes somebody who is a practiced drinker can hide the physical signs of intoxication.
. . . [b]ut the one thing a practiced drinker cannot do is control the jerking of the involuntary muscles
in [her] eyes." In its closing argument, the defense argued that the horizontal gaze nystagmus test
was not administered properly, was subjective, and could not be verified from the videotape.

 After retiring to deliberate, the jurors sent several notes to the court. The first asked 
for "a copy of the police officer's testimony--specifically, whether he believes the defendant was
intoxicated at the time of arrest." After conferring with the attorneys, the judge sent the jury the
following excerpt from the record in response at 2:58 p.m.: 


Q: What was your conclusion? 


A: Based on what I saw on the field sobriety [tests] and what I noticed in her eyes,
I believed that she was intoxicated to the point where she didn't have normal use
of her normal mental or physical faculties at that point.



At 3:40, the jury sent another note, which read, "We are currently deadlocked 3-3 and are making
no progress toward resolution. Can the Court offer guidance?" The court responded with its own
handwritten note: "Keep Deliberating." At 3:47, the jury again requested part of the record. "1. We
want the record of the police officer's testimony when being questioned by the Prosecutor (not the
Defense). Initial and redirect. 2. We want the chart pad summary that the prosecutor used in
closing argument." The attorneys speculated as to whether the jurors had a dispute. The court
determined that the jury wanted the whole record of the direct and redirect examinations of Officer
Spradlin and that providing them would be improper. The court then responded to question (1), "Be
more specific," and to question (2), "Not in evidence."

 At 4:00 p.m., the jury sent its fourth, and last, note, which read, "We want the
officer's testimony, when being questioned by the Prosecutor, concerning the eye movement test (1st
test performed) on the defendant." The court answered: "Are you in disagreement as to this
testimony?" When the jury elaborated, "We have an individual (or maybe more) who didn't clearly
hear all of the testimony and wants to review it," defense counsel argued that the record should not
be provided because the jury did not indicate that it was in disagreement. See Tex. Code Crim. Proc.
Ann. art. 36.28 (West 1981). (2) The trial court, over defense counsel's objection, sent another portion
of the record in response to this request. (3) 

 The jury ultimately found appellant guilty of the misdemeanor offense of DWI and
the court sentenced her to 180 days in jail and a $2000 fine, with the sentence suspended. The court
placed appellant on community supervision for twenty-four months and denied her motion for new
trial. Appellant then gave notice of appeal.

 Appellant raises three points of error on appeal. Because her second point of error
is dispositive of this appeal, we do not reach appellant's first or third points of error. Appellant
argues in her second point of error that the trial court erred in allowing testimony to be read back to
the jury in the absence of disagreement among the jurors about the testimony.


DISCUSSION


 Appellant argues that under Moore v. State, 874 S.W.2d 671 (Tex. Crim. App. 1994),
article 36.28 requires that the jury have a disagreement about testimony before it can be read back. 
Appellant asserts that the court abused its discretion in allowing the testimony to be read back when
the jury's notes indicated that one or more of the jurors did not hear the testimony, not that the jury
had a disagreement. 

 In response, the State argues that the law does not require the jury to explicitly state
that there is a disagreement, but that a trial court may, in its discretion, infer disagreement. See
Robison v. State, 888 S.W.2d 473, 480 (Tex. Crim. App. 1994). The State attempts to distinguish
Moore, in which the court simply ordered that the requested testimony be read back without
inquiring into whether a dispute existed. (4) Moore, 874 S.W.2d at 674.

 The law governing responses to questions from deliberating juries addresses two
competing concerns: that the trial court not comment on the evidence, but that the jury have the
means to resolve any factual disputes among its members. Robison, 888 S.W.2d at 480. Under
article 36.28, the jurors must disagree about the testimony of a witness before the testimony may be
read back to them. Robison, 888 S.W.2d at 480; Moore, 874 S.W.2d at 673; Iness v. State, 606
S.W.2d 306, 314 (Tex. Crim. App. 1980). Although the trial court may, in its discretion, infer a
dispute, a simple request for testimony does not, by itself, reflect disagreement, implicit or express,
and is not a proper request under article 36.28. Robison, 888 S.W.2d at 480; Moore, 874 S.W.2d
at 673 (citing Jones v. State, 706 S.W.2d 664, 667 (Tex. Crim. App. 1986)). The manner in which
the trial court determines whether there is a factual dispute between the jurors is left to the trial
court's discretion. Robison, 888 S.W.2d at 480. However, the trial court must have some basis other
than speculation that a factual dispute exists. Moore, 874 S.W.2d at 674. The trial court abuses its
discretion if it provides the testimony without determining if a disagreement existed. Id.

 The Robison court held that it was reasonable for the trial court to infer a
disagreement among the jury members. Robison, 888 S.W.2d at 481. Although the jury did not
affirmatively state that there was a disagreement, the trial court responded to the initial request for
testimony by twice instructing the jury that it could only have testimony if it specifically identified
the particular part of testimony that was in dispute. Id. at 480. When the jury responded with a
specific request for a segment of one witness's testimony, the series of notes provided a sound basis
for the reasonable belief that there was a dispute as to that particular testimony. Id. at 480-81. See
also Walker v. State, 994 S.W.2d 199, 205 (Tex. App.--Houston [1st Dist.] 1999, pet. ref'd)
(holding trial court's inference of disagreement unreasonable when judge did not inform jury that
disagreement was necessary upon request for testimony, even though that requirement was provided
in general instructions to jury when it was first sworn); Meeks v. State, 897 S.W.2d 950, 956 (Tex.
App.--Fort Worth 1995, no pet.) (holding that, when court informed jury that testimony could only
be read back in case of dispute, and jury responded by narrowing its requests for testimony, it was
not unreasonable to infer disagreement).

 In this case, the jury did not indicate it was in disagreement either explicitly or
implicitly through its responses to the court's communications. Here, as in Moore, the trial court
could not have inferred a disagreement without resorting to speculation because the jury's "simple
request for testimony" did not reflect disagreement. Moore, 874 S.W.2d at 673. The clear language
of article 36.28 requires that the jury indicate its disagreement as to the statement of a witness for
the judge to provide the testimony. (5) Id. at 674; Robison, 888 S.W.2d at 480. In its brief, the State
argues that, for reasons of etiquette, jury members may have been uncomfortable answering directly
when the court asked whether they were in disagreement as to any particular testimony. Even so,
the court may not infer disagreement based solely on a request for testimony. This fails to satisfy
the statute. Moore, 874 S.W.2d at 673 (rejecting trial court's reasoning: "You know they disagree
or they wouldn't ask"). Even when there has been a previously certified disagreement, and the court
knows that a disagreement at one point existed, a bare request for testimony is not enough to infer
a disagreement. Brooks v. State, 499 S.W.2d 99, 101 (Tex. Crim. App. 1973). In Brooks, the court
correctly declined to replay a videotape previously replayed because the foreman's second request
did not show that the jury was still in dispute as to the testimony it had just reviewed. Id. 

 The court also may not base an inference of disagreement on the fact that the jury
narrowed its request for testimony. It is true that in this case the jury narrowed its request in its
series of correspondence, as in Robison and Meeks. However, in both Robison and Meeks, the
narrowing of the request was relevant because it followed instructions from the trial court that it
could only read back testimony over which the jury was in disagreement and that the jury specifically
identified. See Robison, 888 S.W.2d at 480; Meeks, 897 S.W.2d at 956. A narrowed request in
response to such instructions (6) gives rise to an inference that the particular testimony requested was
the matter in dispute. Here, the jury narrowed its requests in response to the court's exhortation to
be more specific. On these facts, the narrowing did not indicate either that a dispute existed, or what
the dispute concerned.

 Because the jury did not explicitly or implicitly indicate that it was in disagreement,
it was an abuse of discretion for the trial court to read back the testimony to the jury. Having decided
that the trial court erred, we must decide whether the trial court's error was harmful. See Brown v.
State, 870 S.W.2d 53, 55 (Tex. Crim. App. 1994) (holding that reviewing court should not disturb
trial court's decision to read testimony back to jury unless abuse of discretion and harm are shown). 
The requirement that a judge determine whether a jury disagrees before reading a witness's
testimony to the jury is not mandated in either our state or federal constitutions; it is purely a creation
of the legislature. Walker, 994 S.W.2d at 205. Thus the error did not constitute a denial of a
constitutional right and a harm analysis under appellate rule 44.2(a) (constitutional error) is not
required. Id.

 Instead, we conduct our harm analysis under rule 44.2(b) (other errors), which states,
"Any other error . . . that does not affect substantial rights must be disregarded." Tex. R. App. P.
44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or
influence in determining the jury's verdict." King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App.
1997). The error had a substantial and injurious effect or influence if it substantially swayed the
jury's judgment. See Kotteakos v. United States, 328 U.S. 750, 764-65 (1946) (cited with approval
in King, 953 S.W.2d at 271). Our inquiry is "whether the error itself had substantial influence. If
so, or if one is left in grave doubt, the conviction cannot stand." Kotteakos, 328 U.S. at 765. On the
other hand, if "the conviction is sure that the error did not influence the jury, or had but very slight
effect, the verdict and the judgment should stand." Id.

 We examine the influence this improper repetition of testimony had in light of all the
other evidence. See Kotteakos, 328 U.S. at 762-62 (recommending "examination of the proceedings
in their entirety," especially in cases of admission of cumulative evidence or errors in instructions
to jury); King, 953 S.W.2d at 273 (considering influence of erroneous admission of evidence in light
of all other evidence of future dangerousness). In this case the testimony provided to the jury
concerned the contested issue of whether the horizontal gaze nystagmus test was conducted properly
and whether it was reliable; Officer Spradlin testified that there were no flashing lights or
irregularities that would affect the integrity of the results. The horizontal gaze nystagmus test was
crucial evidence because the defense presented credible arguments that appellant had passed each
of the other tests. The State responded by characterizing the horizontal gaze nystagmus test as
identifying the one thing even a practiced drinker cannot disguise: the involuntary jerking of the eye
muscles. In fact, the jury described itself as "deadlocked 3-3," and "making no progress toward
resolution," when it specifically requested testimony regarding the horizontal gaze nystagmus test. 
The jury then reached a unanimous verdict. Given this sequence of events, it would be reasonable
to believe that this particular information was instrumental in breaking the deadlock. From all
appearances, it may well have been the decisive factor in the jury's decision. Therefore we cannot
say with fair assurance that the repetition of this testimony had no substantial injurious effect on the
judgment of the jury. Kotteakos, 328 U.S. at 766. Because the trial court's decision to read
testimony back to the jury in the absence of an expressed disagreement was harmful error, we must
reverse the conviction.


CONCLUSION


 We reverse the conviction and remand to the county court at law for further
proceedings consistent with this opinion.



 

 David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear. 

Reversed and Remanded

Filed: May 13, 2004

Publish

1. Officer Spradlin testified that the tests are not designed to be passed or failed, but that they
give police officers the opportunity to look for clues of intoxication. Nevertheless, we use the term
"passed" to indicate that a defendant's performance on a particular test would not lead to the
conclusion that she was intoxicated. 
2. The code of criminal procedure requires that the jury be in disagreement: 


 In the trial of a criminal case in a court of record, if the jury disagree as
to the statement of any witness they may, upon applying to the court, have read
to them from the court reporter's notes that part of such witness testimony or the
particular point in dispute, and no other; but if there be no such reporter, or if his
notes cannot be read to the jury, the court may cause such witness to be again
brought upon the stand and the judge shall direct him to repeat his testimony as
to the point in dispute, and no other, as nearly as he can in the language used on
the trial.


Tex. Code Crim. Proc. Ann. art. 36.28 (West 1981). 
3. The second portion of the record read: 


Q: All of these questions about the horizontal gaze nystagmus test, if she had
looked anywhere else, like at cars moving or lights moving or birds flying
through the sky, would she have been performing the tests properly? 


A: No, ma'am.


Q: Did she keep her eyes on the stimulus you moved back and forth?


A: Yes, ma'am.


Q: Did she perform at least that part of the test in order to maintain the integrity
of the results?


A: Yes, ma'am.


Q: Did you do the tests properly in order to read her results properly? 


A: Yes, ma'am.


Q: If somebody has very distinct and obvious nystagmus is it necessary to do
each part of the test twice? 


A If it's very obvious when you first do it the very first time, if there is no
question that nystagmus has started at maximum deviation, and some people
will see it, and it is obvious that is what it's doing. I have done it where I do
it one time on this side, and I will go back and do it one time on this side, if
it's obvious.


A: Yes, ma'am.


Q: And you started with her right eye? 


A: Yes, ma'am.


Q: In your experience does that affect the performance of the test? 


A: No, ma'am.


Q: Have you altered your administration of these tests in any way that would
change the reliability of the results? 


A: No, ma'am.
4. Here the trial court did read back the first excerpt of testimony without inquiring whether
there was a dispute, but there is no record of objection to this excerpt. Our review focuses on the
second request for testimony.
5. The jury may do this explicitly. See, e.g., Brown v. State, 870 S.W.2d 53, 55 (Tex. Crim.
App. 1994) ("We, the jury, are in disagreement of who Latonya said was in the bathroom."); Iness
v. State, 606 S.W.2d 306, 314 (Tex. Crim. App. 1980) ("[T]he court did not abuse its discretion in
interpreting the sentence, 'we are in disagreement concerning this matter' as an expression of
disagreement . . . ."). 
6. In Robison, one of the court's notes read: "you are instructed if you desire to have any
testimony, to notify the Court in writing of the particular part or parts of any witness' testimony
which is in dispute and which you desire." Robison v. State, 888 S.W.2d 473, 480 (Tex. Crim. App.
1994). In Meeks, the court told the jury: "If you report that you disagree concerning the statement
of a witness and specify the point in which you disagree, the Court Reporter will search his notes and
read to you the testimony of the witness on the point." Meeks v. State, 897 S.W.2d 950, 956 (Tex.
App.--Fort Worth 1995, no pet.).