**Opinion issued January 23, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00350-CR

———————————

## ANTHONY JEROME GILBERT, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

## On Appeal from the 21st District Court
### Washington County, Texas
### Trial Court Case No. 15671

---

## DISSENTING OPINION

A jury convicted appellant, Anthony Jerome Gilbert, of deadly conduct—

discharge of a firearm, and the trial court sentenced him to seventy-five years'

confinement based on a finding that he was an habitual offender. *See* TEX. PENAL

CODE ANN. § 22.05(b)(1) (Vernon 2011). Because I believe the evidence was insufficient to support appellant's conviction under Penal Code section 22.05(b)(1), I respectfully dissent. I would reverse the judgment and render judgment of acquittal.

## Background

Appellant was indicted under Penal Code section 22.05 as follows:

The Grand Jurors for the County of Washington, State of Texas, duly selected, impaneled, sworn, charged and organized as such at the September Term, A.D. 2009, of the Twenty-first Judicial District Court of said County, upon their oaths present in and to said Court that ANTHONY JEROME GILBERT, defendant herein, on or about the 26th day of September, 2009, and before the presentment of this indictment, in said County and State, did then and there knowingly discharge a firearm at or in the direction of an individual, namely, James Charles Daniels, Sr.

The indictment was enhanced by a prior conviction for the felony offense of aggravated assault, committed March 31, 1993, and the felony offense of aggravated assault of a peace officer, for which appellant was convicted on June 16, 1994.

## Analysis

The indictment alleged that appellant "knowingly discharge[d] a firearm at or in the direction of an individual, namely, James Charles Daniels, Sr.," in violation of Penal Code section 22.05(b)(1). Appellant argues that the evidence

2

presented at trial was insufficient to convict him of deadly conduct under subsection 22.05(b)(1).  I agree.

Penal Code section 22.05, "Deadly Conduct," provides, in relevant part:

(a) A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury.

(b) A person commits an offense if he knowingly discharges a firearm at or in the direction of:

(1) one or more individuals; or

(2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied.
. . . .

(e) An offense under Subsection (a) is a Class A misdemeanor.  An offense under Subsection (b) is a felony of the third degree.

TEX. PENAL CODE ANN. § 22.05(b)(1).

A person commits the offense of deadly conduct if he knowingly discharges a firearm at or in the direction of one or more individuals.  *See id.*  Deadly conduct requires intent that falls short of harming another person; that is, although no physical harm results, the act is highly dangerous.  *Walker v. State*, 994 S.W.2d 199, 203 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).  It is not a result-oriented offense because it does not prescribe a specific result; it requires only that the actor have engaged in the proscribed conduct.  *Ford v. State*, 38 S.W.3d 836, 845 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd); *see* TEX. PENAL CODE ANN. § 22.05.  Because it is not a result-oriented offense, the State can prove the

offense merely by proving that the defendant engaged in the conduct without the additional requirement that a specific result was caused with the requisite criminal intent. *Ford*, 38 S.W.3d at 845.

The appellate courts apply the legal-sufficiency standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979), to determine whether the evidence is sufficient to support each element of a criminal offense that the State must prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under this standard, an appellate court views the evidence "in the light most favorable to the verdict." *Id.* at 899 (quoting *Watson v. State*, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006)). Viewing the evidence in the light most favorable to the verdict means that the reviewing court is required to defer to the jury's credibility and weight determinations. *Id.* The evidence is insufficient under this standard if (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense; or (2) the evidence conclusively establishes a reasonable doubt. *Kiffe v. State*, 361 S.W.3d 104, 107 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The jury's verdict should be upheld "unless a rational factfinder must have had reasonable doubt as to any essential element." *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009); *see also Johnson v. Louisiana*, 406 U.S. 356, 362, 92 S. Ct. 1620, 1625 (1972)

4

("That rational men disagree is not in itself equivalent to a failure of proof by the State, nor does it indicate infidelity to the reasonable-doubt standard.").

When assessing whether evidence is sufficient to support a conviction, an appellate court must determine "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Kiffe*, 361 S.W.3d at 108 (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Direct and circumstantial evidence are treated equally, and circumstantial evidence is considered to be as probative as direct evidence. *Id.* The appellate court's duty is "to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged." *Winfrey v. State*, 323 S.W.3d 875, 882 (Tex. Crim. App. 2010) (quoting *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). "[T]he evidence is insufficient as a matter of law if the acts alleged do not constitute the criminal offense charged." *Kiffe*, 361 S.W.3d at 108.

"When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and therefore defer to that determination." *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793). However, if the evidence, when viewed in the light most favorable to the verdict, merely raises a suspicion of guilt, it is legally insufficient to support a conviction beyond a reasonable doubt.

5

*Winfrey*, 323 S.W.3d at 882. If circumstantial evidence provides no more than a suspicion of guilt, the jury may not reach a speculative conclusion. *Deschenes v. State*, 253 S.W.3d 374, 381 (Tex. App.—Amarillo 2008, pet. ref'd) (citing *Allen v. State*, 249 S.W.3d 680, 704 (Tex. App.—Austin 2008, no pet.)).

Here, the evidence clearly establishes that appellant knowingly discharged a firearm. Four eyewitnesses testified to seeing him intentionally fire a shotgun several times. However, there is no more than a scintilla of evidence that appellant knowingly discharged the shotgun "at or in the direction of an individual, namely, James Charles Daniels, Sr.," as charged in the indictment. Rather, *all* of the witnesses testified that appellant shot towards the *house*—including those witnesses who testified that appellant might have shot at Daniels, among several other individuals. Discharging a firearm towards a habitation is a separate offense that was not charged in the indictment. *Compare* TEX. PENAL CODE ANN. § 22.05(b)(1) (discharging firearm towards individual or group of individuals) *with id.* § 22.05(b)(2) (discharging firearm towards habitation with recklessness as to whether it might be occupied); *see also Clinton v. State*, 354 S.W.3d 795, 799 (Tex. Crim. App. 2011) (holding that we look to "the hypothetically correct jury charge" to identify essential elements of crime and that when statute defines alternative methods of manner and means of committing offense and indictment alleges only one of those methods, "the law" for purposes of hypothetically correct

6

jury charge is single method alleged in indictment). Therefore, if the evidence of the direction in which appellant fired the shotgun is meager, but the only rational inference from the totality of the evidence is that he fired at the house—an offense chargeable under Penal Code section 22.05(b)(2)—the evidence was insufficient as a matter of law to establish appellant's guilt under the subsection under which he was charged—section 22.05(b)(1).

The evidence was meager as to the direction in which appellant shot the one shot that was not aimed in the air, but it is clear that the much stronger inference from the testimony of all the witnesses is that appellant shot at the house—not at Daniels. Investigating Officer Snowden testified that Amy Daniels, the complainant's wife, said that appellant originally pointed the gun at her husband, but he pointed the gun away from the direction of Mr. Daniels before firing the second shot. All witnesses stated that appellant fired the first shot in the air. Officer Snowden further testified, "[I]t appeared that there was a gun shot, a shotgun spread of the little BBs or little pellets, on the window to the far right of the house."

Daniels, the complainant, himself testified:

The trunk was popped and [appellant] ran back to the trunk and got a shotgun, he loaded it, and he shot in the air two times and then the next shot was towards my house by the window. . . . I was standing right here on the side of the corner, by the porch, and then I had peeked around and he had fired the shot and he hit the window. And we just all fell down then on the front porch.

7

In short, the complainant testified that he did not even peek around the corner of the porch where he and his family were all gathered until *after* appellant had fired a single shot at the house. Daniels further testified that the shotgun blast hit "on the second window." And he testified that appellant aimed "at the house" and shot, and he did not know whether "it was at the house or me."

Willie Mathis likewise testified that appellant "didn't fire the gun at the house, he shot it on the side of the house"; that he shot "at the porch"; that "[h]e shot on the side of the house"; that he shot "at the house"; and that Daniels was "in the house" when appellant shot "that one time."

Earline Mathis testified that appellant "just went up under this trunk and got the gun and started shooting. My husband was on the porch, and I dived in the house on the floor, and the kids was in the bedroom while he shot it." She further testified that "there was holes up there by the windows and stuff where he could have shot my husband"; that appellant "shot right where the kids were in their rooms," "towards the bedroom in the house," and "[a]t the porch, right there by the window, by the bedroom"; that "my husband was sitting right here and he shot right here at this window here where the kids were in the bedroom"; that "he shot at the window that's closest to the porch"; and that "I just know that he shot at the window right there by the porch."

Finally, Amy Daniels testified that appellant "got out of the car, he popped the trunk, he pulled a gun, he fired once I think in the air and then two more times at the house. One time was where my husband was walking towards the house." She further testified,

> When [appellant] first pull up [the complainant] went out there to try to talk to [appellant], but [appellant] didn't have no understanding because he pulled his gun and he fired. [The complainant] was walking back toward the house and [appellant] fired again, and then he fired one last time. He picked up the shells, got in the car and drove off."

"It was hard to tell" what appellant was shooting at "because it was kind of dark." But, she testified that appellant shot towards "[t]he house."

There was literally no clear, direct, positive testimony from any eyewitness or from any investigating officer that appellant was shooting "at" the complainant. While some of the testimony can be construed as stating that he was shooting "in the direction of" the complainant, *all* of that same testimony confirms that appellant shot twice in the air and fired only one shot "in the direction of" and indeed "at" the house that was occupied by Daniels and others. This testimony that appellant discharged a firearm towards a habitation with recklessness as to whether that habitation was occupied—an offense chargeable under Penal Code section 22.05(b)(2)—does not support his conviction for discharging a firearm toward an individual—an offense charged under Penal Code section 22.05(b)(1) and alleged in the indictment. The evidence, then, when viewed in the light most favorable to

9

the verdict, merely raises a suspicion that appellant was shooting at the complainant. Thus, the only rational inference from the testimony regarding the direction in which appellant shot the one shot that was not aimed into the air was that he discharged the shotgun at the house.

This evidence is insufficient to do more than merely raise a suspicion that appellant was guilty of the crime charged; it is, therefore, insufficient to support appellant's conviction beyond a reasonable doubt. *See Winfrey*, 323 S.W.3d at 882; *Deschenes*, 253 S.W.3d at 381. Thus, I would hold that the trier of fact could not rationally have found beyond a reasonable doubt the essential element that appellant shot at or in the direction of the complainant as alleged in the indictment. *See Winfrey*, 323 S.W.3d at 882; *Deschenes*, 254 S.W.3d at 381.

## Conclusion

I would hold that the evidence was insufficient to support appellant's conviction for knowingly discharging a firearm at or in the direction of an individual, namely, James Charles Daniels, Sr. Therefore, I would reverse and render judgment of acquittal.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Justice Keyes, dissenting.

Publish. TEX. R. APP. P. 47.2(b).

11