# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-03-00158-CR

**Rachelle L. Howell, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY
### NO. 601,688, HONORABLE BILL BENDER, JUDGE PRESIDING

### O P I N I O N

Appellant Rachelle Lee Howell was charged with the offense of driving while intoxicated (DWI), Tex. Pen. Code Ann. § 49.04 (West 2003), and convicted after a jury trial. In three issues on appeal, Howell contends that the county court at law erred when it refused to allow defense counsel to cross examine the arresting officer with a field sobriety test manual, allowed testimony to be read back to the jury upon request, and overruled Howell's motion for new trial. Because we hold that the trial court's error in allowing testimony to be read back to the jury without first determining that there was a disagreement among jury members was an abuse of discretion and was harmful, we will reverse the judgment of the county court at law and remand for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

On December 27, 2001, at 12:45 a.m., Officer Patrick Spradlin of the Austin Police Department stopped appellant for speeding. Appellant admitted to having consumed two or three drinks. Officer Spradlin administered a series of field sobriety tests, including the horizontal gaze nystagmus test, the walk and turn test, the one leg stand, and the fingertip touch test. He determined that appellant was intoxicated and arrested her.

Appellant contended throughout her jury trial that she had passed her field sobriety tests and referred the jury to the videotape of those tests.[1] The State then emphasized the horizontal gaze nystagmus test, in which Officer Spradlin tracked appellant's eye movements for signs of involuntary jerking enhanced by the effects of alcohol. In closing arguments, the State's attorney argued, "Sometimes somebody who is a practiced drinker can hide the physical signs of intoxication. . . . [b]ut the one thing a practiced drinker cannot do is control the jerking of the involuntary muscles in [her] eyes." In its closing argument, the defense argued that the horizontal gaze nystagmus test was not administered properly, was subjective, and could not be verified from the videotape.

After retiring to deliberate, the jurors sent several notes to the court. The first asked for "a copy of the police officer's testimony—specifically, whether he believes the defendant was

---

[1] Officer Spradlin testified that the tests are not designed to be passed or failed, but that they give police officers the opportunity to look for clues of intoxication. Nevertheless, we use the term "passed" to indicate that a defendant's performance on a particular test would not lead to the conclusion that she was intoxicated.

intoxicated at the time of arrest." After conferring with the attorneys, the judge sent the jury the following excerpt from the record in response at 2:58 p.m.:

> Q: What was your conclusion?
>
> A: Based on what I saw on the field sobriety [tests] and what I noticed in her eyes, I believed that she was intoxicated to the point where she didn't have normal use of her normal mental or physical faculties at that point.

At 3:40, the jury sent another note, which read, "We are currently deadlocked 3-3 and are making no progress toward resolution. Can the Court offer guidance?" The court responded with its own handwritten note: "Keep Deliberating." At 3:47, the jury again requested part of the record. "1. We want the record of the police officer's testimony when being questioned by the Prosecutor (not the Defense). Initial and redirect. 2. We want the chart pad summary that the prosecutor used in closing argument." The attorneys speculated as to whether the jurors had a dispute. The court determined that the jury wanted the whole record of the direct and redirect examinations of Officer Spradlin and that providing them would be improper. The court then responded to question (1), "Be more specific," and to question (2), "Not in evidence."

At 4:00 p.m., the jury sent its fourth, and last, note, which read, "We want the officer's testimony, when being questioned by the Prosecutor, concerning the eye movement test (1st test performed) on the defendant." The court answered: "Are you in disagreement as to this testimony?" When the jury elaborated, "We have an individual (or maybe more) who didn't clearly hear all of the testimony and wants to review it," defense counsel argued that the record should not be provided because the jury did not indicate that it was in disagreement. *See* Tex. Code Crim. Proc.

3

Ann. art. 36.28 (West 1981).[2] The trial court, over defense counsel's objection, sent another portion

of the record in response to this request.[3]

---

[2] The code of criminal procedure requires that the jury be in disagreement:

> In the trial of a criminal case in a court of record, if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other; but if there be no such reporter, or if his notes cannot be read to the jury, the court may cause such witness to be again brought upon the stand and the judge shall direct him to repeat his testimony as to the point in dispute, and no other, as nearly as he can in the language used on the trial.

Tex. Code Crim. Proc. Ann. art. 36.28 (West 1981).

[3] The second portion of the record read:

Q: All of these questions about the horizontal gaze nystagmus test, if she had looked anywhere else, like at cars moving or lights moving or birds flying through the sky, would she have been performing the tests properly?

A: No, ma'am.

Q: Did she keep her eyes on the stimulus you moved back and forth?

A: Yes, ma'am.

Q: Did she perform at least that part of the test in order to maintain the integrity of the results?

A: Yes, ma'am.

Q: Did you do the tests properly in order to read her results properly?

A: Yes, ma'am.

Q: If somebody has very distinct and obvious nystagmus is it necessary to do each part of the test twice?

A If it's very obvious when you first do it the very first time, if there is no

4

The jury ultimately found appellant guilty of the misdemeanor offense of DWI and the court sentenced her to 180 days in jail and a $2000 fine, with the sentence suspended. The court placed appellant on community supervision for twenty-four months and denied her motion for new trial. Appellant then gave notice of appeal.

Appellant raises three points of error on appeal. Because her second point of error is dispositive of this appeal, we do not reach appellant's first or third points of error. Appellant argues in her second point of error that the trial court erred in allowing testimony to be read back to the jury in the absence of disagreement among the jurors about the testimony.

---

question that nystagmus has started at maximum deviation, and some people will see it, and it is obvious that is what it's doing. I have done it where I do it one time on this side, and I will go back and do it one time on this side, if it's obvious.

A: Yes, ma'am.

Q: And you started with her right eye?

A: Yes, ma'am.

Q: In your experience does that affect the performance of the test?

A: No, ma'am.

Q: Have you altered your administration of these tests in any way that would change the reliability of the results?

A: No, ma'am.

## DISCUSSION

Appellant argues that under *Moore v. State*, 874 S.W.2d 671 (Tex. Crim. App. 1994), article 36.28 requires that the jury have a disagreement about testimony before it can be read back. Appellant asserts that the court abused its discretion in allowing the testimony to be read back when the jury's notes indicated that one or more of the jurors did not hear the testimony, not that the jury had a disagreement.

In response, the State argues that the law does not require the jury to explicitly state that there is a disagreement, but that a trial court may, in its discretion, infer disagreement. *See Robison v. State*, 888 S.W.2d 473, 480 (Tex. Crim. App. 1994). The State attempts to distinguish *Moore*, in which the court simply ordered that the requested testimony be read back without inquiring into whether a dispute existed.[4] *Moore*, 874 S.W.2d at 674.

The law governing responses to questions from deliberating juries addresses two competing concerns: that the trial court not comment on the evidence, but that the jury have the means to resolve any factual disputes among its members. *Robison*, 888 S.W.2d at 480. Under article 36.28, the jurors must disagree about the testimony of a witness before the testimony may be read back to them. *Robison*, 888 S.W.2d at 480; *Moore*, 874 S.W.2d at 673; *Iness v. State*, 606 S.W.2d 306, 314 (Tex. Crim. App. 1980). Although the trial court may, in its discretion, infer a dispute, a simple request for testimony does not, by itself, reflect disagreement, implicit or express, and is not a proper request under article 36.28. *Robison*, 888 S.W.2d at 480; *Moore*, 874 S.W.2d

---

[4] Here the trial court did read back the first excerpt of testimony without inquiring whether there was a dispute, but there is no record of objection to this excerpt. Our review focuses on the second request for testimony.

at 673 (citing *Jones v. State*, 706 S.W.2d 664, 667 (Tex. Crim. App. 1986)). The manner in which the trial court determines whether there is a factual dispute between the jurors is left to the trial court's discretion. *Robison*, 888 S.W.2d at 480. However, the trial court must have some basis other than speculation that a factual dispute exists. *Moore*, 874 S.W.2d at 674. The trial court abuses its discretion if it provides the testimony without determining if a disagreement existed. *Id*.

The *Robison* court held that it was reasonable for the trial court to infer a disagreement among the jury members. *Robison*, 888 S.W.2d at 481. Although the jury did not affirmatively state that there was a disagreement, the trial court responded to the initial request for testimony by twice instructing the jury that it could only have testimony if it specifically identified the particular part of testimony that was in dispute. *Id.* at 480. When the jury responded with a specific request for a segment of one witness's testimony, the series of notes provided a sound basis for the reasonable belief that there was a dispute as to that particular testimony. *Id.* at 480-81. *See also Walker v. State*, 994 S.W.2d 199, 205 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (holding trial court's inference of disagreement unreasonable when judge did not inform jury that disagreement was necessary upon request for testimony, even though that requirement was provided in general instructions to jury when it was first sworn); *Meeks v. State*, 897 S.W.2d 950, 956 (Tex. App.—Fort Worth 1995, no pet.) (holding that, when court informed jury that testimony could only be read back in case of dispute, and jury responded by narrowing its requests for testimony, it was not unreasonable to infer disagreement).

In this case, the jury did not indicate it was in disagreement either explicitly or implicitly through its responses to the court's communications. Here, as in *Moore*, the trial court

7

could not have inferred a disagreement without resorting to speculation because the jury's "simple request for testimony" did not reflect disagreement. *Moore*, 874 S.W.2d at 673. The clear language of article 36.28 requires that the jury indicate its disagreement as to the statement of a witness for the judge to provide the testimony.[5] *Id.* at 674; *Robison*, 888 S.W.2d at 480. In its brief, the State argues that, for reasons of etiquette, jury members may have been uncomfortable answering directly when the court asked whether they were in disagreement as to any particular testimony. Even so, the court may not infer disagreement based solely on a request for testimony. This fails to satisfy the statute. *Moore*, 874 S.W.2d at 673 (rejecting trial court's reasoning: "You know they disagree or they wouldn't ask"). Even when there has been a previously certified disagreement, and the court knows that a disagreement at one point existed, a bare request for testimony is not enough to infer a disagreement. *Brooks v. State*, 499 S.W.2d 99, 101 (Tex. Crim. App. 1973). In *Brooks*, the court correctly declined to replay a videotape previously replayed because the foreman's second request did not show that the jury was still in dispute as to the testimony it had just reviewed. *Id.*

The court also may not base an inference of disagreement on the fact that the jury narrowed its request for testimony. It is true that in this case the jury narrowed its request in its series of correspondence, as in *Robison* and *Meeks*. However, in both *Robison* and *Meeks*, the narrowing of the request was relevant because it followed instructions from the trial court that it could only read back testimony over which the jury was in disagreement and that the jury specifically

---

[5] The jury may do this explicitly. *See, e.g.*, *Brown v. State*, 870 S.W.2d 53, 55 (Tex. Crim. App. 1994) ("We, the jury, are in disagreement of who Latonya said was in the bathroom."); *Iness v. State*, 606 S.W.2d 306, 314 (Tex. Crim. App. 1980) ("[T]he court did not abuse its discretion in interpreting the sentence, 'we are in disagreement concerning this matter' as an expression of disagreement . . . .").

8

identified. *See Robison*, 888 S.W.2d at 480; *Meeks*, 897 S.W.2d at 956. A narrowed request in response to such instructions[6] gives rise to an inference that the particular testimony requested *was* the matter in dispute. Here, the jury narrowed its requests in response to the court's exhortation to be more specific. On these facts, the narrowing did not indicate either that a dispute existed, or what the dispute concerned.

Because the jury did not explicitly or implicitly indicate that it was in disagreement, it was an abuse of discretion for the trial court to read back the testimony to the jury. Having decided that the trial court erred, we must decide whether the trial court's error was harmful. *See Brown v. State*, 870 S.W.2d 53, 55 (Tex. Crim. App. 1994) (holding that reviewing court should not disturb trial court's decision to read testimony back to jury unless abuse of discretion and harm are shown). The requirement that a judge determine whether a jury disagrees before reading a witness's testimony to the jury is not mandated in either our state or federal constitutions; it is purely a creation of the legislature. *Walker*, 994 S.W.2d at 205. Thus the error did not constitute a denial of a constitutional right and a harm analysis under appellate rule 44.2(a) (constitutional error) is not required. *Id.*

Instead, we conduct our harm analysis under rule 44.2(b) (other errors), which states, "Any other error . . . that does not affect substantial rights must be disregarded." Tex. R. App. P.

---

[6] In *Robison,* one of the court's notes read: "you are instructed if you desire to have any testimony, to notify the Court in writing of the particular part or parts of any witness' testimony which is in dispute and which you desire." *Robison v. State*, 888 S.W.2d 473, 480 (Tex. Crim. App. 1994). In *Meeks*, the court told the jury: "If you report that you disagree concerning the statement of a witness and specify the point in which you disagree, the Court Reporter will search his notes and read to you the testimony of the witness on the point." *Meeks v. State*, 897 S.W.2d 950, 956 (Tex. App.—Fort Worth 1995, no pet.).

9

44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). The error had a substantial and injurious effect or influence if it substantially swayed the jury's judgment. *See Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946) (cited with approval in *King*, 953 S.W.2d at 271). Our inquiry is "whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." *Kotteakos*, 328 U.S. at 765. On the other hand, if "the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand." *Id*.

We examine the influence this improper repetition of testimony had in light of all the other evidence. *See Kotteakos*, 328 U.S. at 762-62 (recommending "examination of the proceedings in their entirety," especially in cases of admission of cumulative evidence or errors in instructions to jury); *King*, 953 S.W.2d at 273 (considering influence of erroneous admission of evidence in light of all other evidence of future dangerousness). In this case the testimony provided to the jury concerned the contested issue of whether the horizontal gaze nystagmus test was conducted properly and whether it was reliable; Officer Spradlin testified that there were no flashing lights or irregularities that would affect the integrity of the results. The horizontal gaze nystagmus test was crucial evidence because the defense presented credible arguments that appellant had passed each of the other tests. The State responded by characterizing the horizontal gaze nystagmus test as identifying the one thing even a practiced drinker cannot disguise: the involuntary jerking of the eye muscles. In fact, the jury described itself as "deadlocked 3-3," and "making no progress toward resolution," when it specifically requested testimony regarding the horizontal gaze nystagmus test.

The jury then reached a unanimous verdict. Given this sequence of events, it would be reasonable to believe that this particular information was instrumental in breaking the deadlock. From all appearances, it may well have been the decisive factor in the jury's decision. Therefore we cannot say with fair assurance that the repetition of this testimony had no substantial injurious effect on the judgment of the jury. *Kotteakos*, 328 U.S. at 766. Because the trial court's decision to read testimony back to the jury in the absence of an expressed disagreement was harmful error, we must reverse the conviction.

## CONCLUSION

We reverse the conviction and remand to the county court at law for further proceedings consistent with this opinion.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear.

Reversed and Remanded

Filed: May 13, 2004

Publish

11