TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





ON REMAND







NO. 03-03-00158-CR






Rachelle L. Howell, Appellant


v.


The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY

NO. 601688, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 A jury convicted appellant Rachelle Lee Howell of the offense of driving while
intoxicated (DWI) in 2003. See Tex. Pen. Code Ann. § 49.04 (West 2003). On appeal, appellant
contends the court made the following errors: (1) refused to allow appellant to cross-examine the
arresting officer with a field sobriety test manual, (2) allowed testimony to be read back to the jury,
and (3) denied appellant's motion for new trial based on the court's failure to grant her challenge for
cause against a juror. In a prior opinion, this Court reversed the judgment of the trial court as to
appellant's second issue, remanded the cause to the trial court for further proceedings, and did not
reach the remaining issues. Howell v. State, 149 S.W.3d 686, 693 (Tex. App.--Austin 2004). The
court of criminal appeals reversed our decision on appellant's second issue and remanded the cause
back to this Court with instructions to reach the first and third issues. Howell v. State, 175 S.W.3d
786, 793 (Tex. Crim. App. 2005). 

 Because we conclude that the trial court's refusal to allow cross-examination with the
field sobriety test manual was not harmful and because appellant did not properly preserve error with
regard to the challenge for cause, we will affirm the trial court's judgment of conviction.


FACTUAL AND PROCEDURAL BACKGROUND


 On December 27, 2001, at 12:45 a.m., Officer Spradlin of the Austin Police
Department stopped appellant for speeding. Appellant told Officer Spradlin she had consumed two
or three drinks. Officer Spradlin administered a series of field sobriety tests, including the horizontal
gaze nystagmus test. Based on those tests, he determined that appellant was intoxicated and arrested
her. The field sobriety tests were recorded on a videotape, which was introduced into evidence at 
trial. At trial, the State argued that appellant was legally intoxicated at the time of her arrest, as
evidenced by her performance on the field sobriety tests and her breath test score of 0.113. 
Appellant argued that she had passed most of the field sobriety tests, that the horizontal gaze
nystagmus test had been administered too quickly to be accurate, and that her breath test score,
measured more than one hour after her arrest, was inconclusive of her intoxication at the time of
arrest. The jury found appellant guilty of DWI, and the trial court sentenced her to 180 days in jail
and imposed a $2,000 fine, with the sentence suspended. The trial court placed appellant on
community supervision for twenty-four months. Appellant filed a motion for new trial, which the
trial court denied. Appellant appeals the judgment of the trial court.


DISCUSSION


The Field Sobriety Manual

 In her first issue, appellant contends that the trial court erred in refusing to allow her
to cross-examine Officer Spradlin with a field sobriety test manual because portions of the manual
were relevant to a determination of whether Officer Spradlin properly performed the horizontal gaze
nystagmus test. See Tex. R. Evid. 401, 402. (1) During cross-examination of Officer Spradlin,
appellant handed the officer a copy of the U.S. Department of Transportation National Highway
Traffic Safety Administration (NHTSA) DWI Detection and Standardized Field Sobriety Test
Instructor Manual. Officer Spradlin admitted that the NHTSA manual was reliable authority, and
appellant began questioning Officer Spradlin about the horizontal gaze nystagmus test, using the
manual as a reference and asking Officer Spradlin to read from it. According to Officer Spradlin's
testimony, the horizontal gaze nystagmus field sobriety test is a four-phase test in which an officer
asks an individual to follow the movement of a stimulus such as a pen tip with her eyes, while the
police officer looks for an involuntary jerking of the eyeball, which is exaggerated by the use of
alcohol or drugs. Appellant questioned Officer Spradlin about the speed at which the stimulus
should be moved during the test. Officer Spradlin indicated that, in his field sobriety test training
class, he was told that a common mistake in administering the test is moving the stimulus too quickly
and that he was instructed to move the stimulus slowly. Appellant then questioned Officer Spradlin
about his training regarding different types of nystagmus not caused by alcohol use:


Q. You are also taught about a variety of different types of things that could cause
nystagmus in the class, right?


A. Yes, sir.


Q. And you are taught that one non-alcohol related nystagmus is optokinetic
nystagmus; is that correct?


A. Yes, sir.


Q. And that can occur from watching things too quickly, that move too quickly? 



 At this point, the State objected to appellant's line of questioning on relevance
grounds:

PROSECUTION: Your Honor, we are talking about 47 kinds of nystagmus. The
optokinetic is a kind with flashing lights, which is not relevant. 47 different kinds
of nystagmus are not the kind of nystagmus, and if we want to get into that, this is
completely irrelevant; it would be confusing to the jury.



 In response, appellant stated:


DEFENSE: Judge, the manual says that optokinetic nystagmus, the manual says that
as long as the stimulus is moved slowly and smoothly across the field of view, it will
prevent optokinetic nystagmus.



 The court sustained the State's objection and instructed the jury to disregard
appellant's question regarding optokinetic nystagmus. Appellant then asked Officer Spradlin
whether moving the stimulus too quickly would interfere with a suspect's performance during the
horizontal gaze nystagmus test. Officer Spradlin said that he did not know. Appellant asked Officer
Spradlin to reaffirm the authority of the NHTSA manual and directed Officer Spradlin to read a
portion of the manual listing examples of optokinetic nystagmus. The State objected: 

PROSECUTION: Objection, Your Honor. You have already ruled on this


DEFENSE: May I show this to you, Your Honor?


THE COURT: I made my ruling. Where are you going?


DEFENSE: Because this manual says he did the test incorrectly -


PROSECUTION: That is not true.


THE COURT: My ruling is to move on to something else.



 In response, appellant asked permission to cross-examine with a learned treatise. The
court then dismissed the jury and allowed appellant to continue her line of questioning. With no jury
present, appellant directed Officer Spradlin to read portions of the NHTSA manual:


A. The examples of optokinetic nystagmus include watching scenery while looking
out the window of a moving train or watching a rapidly spinning wheel that has
alternating lights flashing on it.


Q. Okay. It just says those are examples of optokinetic nystagmus, right?


A. Yes, sir.


Q: It doesn't say that's the only kind of optokinetic nystagmus, correct?


A. Not in that paragraph, no, sir.


Q. Now, read, if you would and in particular, make sure it is loud enough for the
Judge to hear what it says here in this paragraph, right there.


A. Point out that during horizontal gaze nystagmus tests, the subject is required to
focus the eye on a pen light or pencil or similar object that moves slowly,
relatively slowly across the field of view so that optokinetic nystagmus will not
occur.


. . . 


A. The horizontal gaze nystagmus test will not be influenced by optokinetic
nystagmus if administered properly.



 In response, the State directed Officer Spradlin to read another paragraph from the
manual describing optokinetic nystagmus:


A. Optokinetic nystagmus occurs when the eyes fixate on an object that suddenly
moves out of sight or when the eyes watch sharply contrasting moving images. 



 The State then asserted that optokinetic nystagmus, as described in that paragraph in
the manual, was irrelevant to Officer Spradlin's performance of the horizontal gaze nystagmus test: 


PROSECUTION: Your Honor, not moving a pen slowly enough does not cause the
object to move out of the field of sight and does not cause the eye to watch sharply
contrasting images, such as a wheel spinning with black and white images. Such
optokinetic nystagmus, done as this officer did it, is irrelevant.



 Appellant argued that the jury should make that determination:



DEFENSE: Your Honor, my request would be to let the jury make that decision, and
let the prosecutor make that argument and let the prosecutor add this additional
information that she thinks and keeps on saying. But I think the jury has a right to
hear this and make their own determination. That is my request.

 The State responded: 



PROSECUTION: Judge, if we are going to go through the entire manual and talk
about all 47 kinds of nystagmus and read selective passages that question what the
officer did and imply that he was causing some other kind of nystagmus, we will be
here until next week. 



The court sustained the State's relevance objection and, when the jury returned, instructed the jury
to disregard appellant's last line of questioning.

 To be admissible, appellant's line of questioning regarding optokinetic nystagmus
must have been relevant under Rules 401 and 402. See Tex. R. Evid. 401, 402. Rule 401 defines
relevant evidence as "evidence having any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable than it would be
without the evidence." Id. R. 401. In making its relevancy determination, the trial court must
determine whether a reasonable person would believe that the particular piece of evidence was
helpful in determining the truth or falsity of any fact that was of consequence to the lawsuit. See id.;
Khoshayand v. State, 179 S.W.3d 779, 784 (Tex. App.--Dallas 2005, no pet.). Once the trial court
determines that the evidence is relevant, it must look to rule 402 to determine if the evidence should
be admitted. Tex. R. Evid. 402. Rule 402 states that relevant evidence is generally admissible,
except as provided by the Constitution, statute, the rules of evidence, or other rules. Id. Evidence
that is not relevant is inadmissible. Id. If the trial court believes that a reasonable person might
conclude that the evidence is relevant, then it is bound to admit the evidence. Montgomery v. State,
810 S.W.2d 372, 382 (Tex. Crim. App. 1990).

 The standard of review for a trial court's admissibility decision is an abuse of
discretion standard. Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). In applying this
standard, we review the trial court's ruling in light of the record before the court at the time the
ruling was made, Khoshayand, 179 S.W.3d at 784, and will not disturb the ruling absent a showing
in the record that the trial court abused its discretion, Rankin v. State, 821 S.W.2d 230 (Tex.
App.--Houston [14th Dist.] 1991, no pet.). A trial court abuses its discretion when it acts without
reference to any guiding rules or principles or acts in an arbitrary or unreasonable manner. 
Montgomery, 810 S.W.2d at 380. We will uphold the trial court's ruling if the court employed the
appropriate analysis, cf. id., if the ruling is reasonably supported by the record and is correct under
any theory of law applicable to the case, Khoshayand, 179 S.W.3d at 784, and if the ruling is within
the "zone of reasonable disagreement," Powell, 63 S.W.3d at 438. 

 In her brief, appellant contends that the NHTSA manual discussion of optokinetic
nystagmus was relevant to her contention that Officer Spradlin had incorrectly administered the
horizontal gaze nystagmus test by moving the stimulus too quickly. If the test was performed
incorrectly, she argues, then Officer Spradlin may have erroneously concluded that appellant was
intoxicated at the time of arrest.

 We agree with appellant that the portion of the NHTSA manual regarding whether
optokinetic nystagmus, which is not caused by alcohol consumption, may be caused by watching
quickly moving objects was relevant. The excluded portions of the manual specifically caution about
the possibility of confusing horizontal gaze nystagmus, which is a sign of intoxication, with
optokinetic nystagmus. Officer Spradlin testified that he was trained to perform the field sobriety
tests according to the standards set out in the NHTSA manual and that the manual was authoritative
and reliable. Further, he testified that he was instructed to move the stimulus slowly when
performing the horizontal gaze nystagmus test. Given this, appellant should have been allowed to
question Officer Spradlin about his administration of the field sobriety tests to her on the night of
her arrest based on the national standards laid out in the manual to determine if imprecise
administration of the test led to a result mistakenly assessed as horizontal gaze nystagmus. Further,
during cross-examination, appellant directed Officer Spradlin to calculate the minimum amount of
time it would take to correctly administer all four phases of the horizontal gaze nystagmus test. 
Because the time code on the videotape of appellant performing the test showed that Officer Spradlin
took less time to administer the entire test than his minimum estimate, appellant contended that the
test had been done too quickly to be accurate. A reasonable person might have concluded that the
evidence was helpful in determining whether Officer Spradlin correctly performed the horizontal
gaze nystagmus test and whether the results of the test indicated appellant was intoxicated. The trial
court's decision to exclude the evidence was not based on an appropriate relevancy analysis and was,
therefore, arbitrary and an abuse of discretion. See Montgomery, 810 S.W.2d at 380.

 Having held that the trial court's exclusion of a portion of the NHTSA manual was
error, we must next address whether that error was harmful. The exclusion of this evidence falls 
into the category of non-constitutional error. See West v. State, 169 S.W.3d 275, 279-80 (Tex.
App.--Forth Worth 2005, pet. ref'd) (generally, erroneous admission or exclusion of evidence is
non-constitutional error if court's ruling merely offends rules of evidence). Under Rule 44.2(b),
appellate courts must disregard a non-constitutional error unless the error affects an appellant's
"substantial rights." Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a
substantial and injurious effect or influence in determining the jury's verdict." King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States, 328 U.S. 750, 776
(1946)). In making this determination, the reviewing court must examine the entire record. Burnett
v. State, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002). Under rule 44.2(b), a conviction should not
be reversed when, after examining the record, "the reviewing court has a fair assurance that the error
did not influence the jury or had but a slight effect." McDonald v. State, 179 S.W.3d 571, 578 (Tex.
Crim. App. 2005).

 The exclusion of a portion of the NHTSA manual did not prevent appellant from
arguing that the horizontal gaze nystagmus test may have been administered inaccurately. Although
the trial court halted appellant's cross-examination of Officer Spradlin with regard to the NHTSA
manual's discussion of optokinetic nystagmus and the proper speed at which to move the stimulus,
Officer Spradlin had previously testified three times that the stimulus should be moved slowly during
the test. (2) Based on these three statements, Officer Spradlin's minimum time estimate, and the
videotape evidence of the field sobriety tests, appellant was able to argue that Officer Spradlin's
administration of the horizontal gaze nystagmus test was flawed. 

 In addition, Officer Spradlin testified that he performed three field sobriety tests on
appellant in addition to the horizontal gaze nystagmus test and that she exhibited signs of intoxication
during each test. Officer Spradlin also testified that appellant told him she had consumed two or three
drinks on the night of her arrest. Although the breath test was performed more than one hour after
appellant was arrested, the results showed she was well over the legal limit, with an alcohol
concentration of 0.113.

 Given the testimony regarding the horizontal gaze nystagmus test, the evidence
oncerning appellant's performance of the other field sobriety tests, the testimony regarding the
number of drinks the appellant had consumed, and the results of appellant's breath test, we conclude
that the exclusion of the evidence in question did not affect a substantial right of the appellant. See
Tex. R. App. P. 44.2(b); King, 953 S.W.2d at 271. After reviewing the entire record, we are
convinced that the exclusion did not influence the determination of the jury or had only a slight
affect. (3)

 Having concluded that the trial court's exclusion of portions of the NHTSA manual
was harmless under Rule 44.2(b), we overrule appellant's first issue. See Tex. R. App. P. 44.2(b).


Challenge for Cause

 In her third issue, appellant contends that the trial court erred in denying her challenge
for cause of potential juror T. Howe.

 During the initial voir dire, appellant asked if the panel members would "hold it
against her" if she did not testify during trial. Several venire members, including Howe, indicated
that they would. Upon further questioning by appellant, four potential jurors again stated that they
would have a bias against the appellant if she did not take the stand. The trial court granted
appellant's challenges for cause of these four individuals. During her individual bench voir dire,
appellant did not ask Howe if she would hold it against appellant if she did not testify, and after
several questions regarding an unrelated matter, the trial court halted appellant's questioning of
Howe. (4) Afterwards, on two occasions, appellant challenged Howe for cause, citing Howe's earlier
indication that she would hold the appellant's silence against her. The trial court denied both
challenges.

 After individual voir dire, appellant requested two additional peremptory strikes,
stating, "I disagree with two of the individuals," but did not specifically identify the objectionable
jurors. The trial court denied appellant's request for additional peremptory strikes. Appellant then
used one of her peremptory strikes to remove Howe from the jury pool. After appellant was
convicted, she filed a motion for new trial. At the hearing on the motion, appellant for the first time
named Stanley Schnell as an objectionable juror whom she would have struck if she had not used a
peremptory strike to remove Howe.

 The court of criminal appeals has outlined the steps that must be followed to preserve
error with respect to a trial court's denial of a challenge for cause:


[A]n appellant must: (1) assert a clear and specific challenge for cause; (2) use a
peremptory strike on the complained-of veniremember; (3) exhaust his peremptory
strikes; (4) request additional peremptory strikes; (5) identify an objectionable juror;
and (6) claim that he would have struck the objectionable juror with a peremptory
strike if he had one to use.



Allen v. State, 108 S.W.3d 281, 282 (Tex. Crim. App. 2003). The court of criminal appeals
explained that to preserve error, all six steps must be completed in the trial court. Id. at 282-83
(waiting until appellate brief to identify objectionable juror who would have been struck is too late
to preserve error).

 Appellant did not complete all the steps necessary to preserve error. During voir dire,
appellant broadly stated that she disagreed with two of the individuals on the jury list, but she did
not specifically name Schnell or any other individual until after the trial had ended. Similarly, it was
not until the hearing on her motion for new trial that appellant claimed she would have removed
Schnell if she had not used a peremptory strike on Howe. Waiting until a motion for new trial
hearing to complete steps five and six does not properly preserve error; all six steps must be
completed during the original trial. See id.; see also Moreno v. State, 587 S.W.2d 405, 408 (Tex.
Crim. App. 1979) (blanket statement that "other jurors" on jury list are objectionable, without
identifying who those jurors are, is not sufficient to preserve error); Credille v. State, 925 S.W.2d
112, 115-16 (Tex. App.--Houston [14th Dist.] 1996, pet. ref'd ) (jury selection error cannot be
preserved in motion for new trial).

 Because appellant did not complete all the steps necessary to preserve error, he has
waived this issue. See Tex. R. App. P. 33.1.


CONCLUSION


 Having overruled appellant's issues on appeal, we affirm the judgment of conviction.



 

 David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: June 23, 2006

Do Not Publish

1. Appellant also contends that the manual constitutes a learned treatise under the rules of
evidence. See Tex. R. Evid. 803(18). For the sake of argument, we will assume that the field
sobriety test manual qualifies as a learned treatise and that a proper predicate had been laid regarding
its authority. See id.
2. In direct examination, Officer Spradlin testified that during the third phase of the horizontal
gaze nystagmus test, the officer should move the stimulus "a whole lot slower" than in the prior
phases of the test. In cross-examination, Officer Spradlin stated that it is important to move the
stimulus slowly during phase four of the test and that he was trained to move the stimulus slowly
during phase four of the test. Finally, just before the excluded exchange regarding optokinetic
nystagmus, Officer Spradlin testified that during training he was told it was a common mistake to
move the stimulus too quickly during the horizontal gaze nystagmus test.
3. In her brief, appellant asserts that the court's refusal to allow cross-examination of Officer
Spradlin with the NHTSA manual rises to the level of constitutional error under Rule 44.2(a), as a
denial of her Sixth Amendment right to cross-examination. See Tex. R. App. P. 44.2(a). However,
the record shows that appellant had ample opportunity to cross-examine Officer Spradlin regarding
the speed at which to move the stimulus during the horizontal gaze nystagmus test. Preventing
appellant from directing Officer Spradlin to read portions of the NHTSA manual describing
optokinetic nystagmus does not constitute a denial of the right to cross-examine.
4. After the trial, during a motion for new trial hearing, appellant stated that during Howe's
individual bench voir dire, she had intended to again ask Howe whether she would hold it against
appellant if she did not testify but that she was "cut off" by the court before she could proceed with
this line of questioning.