# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

=========================================

## ON MOTION FOR REHEARING ON REMAND

=========================================

## NO. 03-03-00158-CR

**Rachelle L. Howell, Appellant**

**v.**

**The State of Texas, Appellee**

===============================================================
### FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY
### NO. 601688, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING
===============================================================

## M E M O R A N D U M   O P I N I O N

Our opinion and judgment issued on June 23, 2006, are withdrawn, and the following opinion is substituted.

A jury convicted appellant Rachelle Lee Howell of the offense of driving while intoxicated (DWI) in 2003. *See* Tex. Pen. Code Ann. § 49.04 (West 2003). On appeal, appellant contends the court made the following errors: (1) refused to allow appellant to cross-examine the arresting officer with a field sobriety test manual, (2) allowed testimony to be read back to the jury, and (3) denied appellant's motion for new trial based on the court's failure to grant her challenge for cause against a juror. In a prior opinion, this Court reversed the judgment of the trial court as to

appellant's second issue, remanded the cause to the trial court for further proceedings, and did not reach the remaining issues. *Howell v. State*, 149 S.W.3d 686, 693 (Tex. App.—Austin 2004). The court of criminal appeals reversed our decision on appellant's second issue and remanded the cause back to this Court with instructions to reach the first and third issues. *Howell v. State*, 175 S.W.3d 786, 793 (Tex. Crim. App. 2005).

Because we conclude that the trial court's refusal to allow cross-examination with the field sobriety test manual was not harmful and because appellant did not properly preserve error with regard to the challenge for cause, we will affirm the trial court's judgment of conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 27, 2001, at 12:45 a.m., Officer Spradlin of the Austin Police Department stopped appellant for speeding. Appellant told Officer Spradlin she had consumed two or three drinks. Officer Spradlin administered a series of field sobriety tests, including the horizontal gaze nystagmus test. Based on those tests, he determined that appellant was intoxicated and arrested her. The field sobriety tests were recorded on a videotape, which was introduced into evidence at trial.

At trial, the State argued that appellant was legally intoxicated at the time of her arrest, as evidenced by her performance on the field sobriety tests and her breath test score of 0.113. In making its case, the State relied on the horizontal gaze nystagmus test, in which Officer Spradlin tracked appellant's eye movements for signs of involuntary jerking enhanced by the effects of

alcohol. In its closing argument, the State argued that even an experienced drinker cannot control the involuntary jerking of the eye muscles that occurs when someone becomes intoxicated.

Appellant, on the other hand, argued that she had passed most of the field sobriety tests, that the horizontal gaze nystagmus test had been administered too quickly to be accurate, and that her breath test score, measured more than one hour after her arrest, was inconclusive of her intoxication at the time of arrest.

During deliberation, the jury sent several notes to the court. The first note asked the court for a copy of the testimony of Officer Spradlin regarding whether he believed appellant was intoxicated at the time of arrest. The court sent the jury an excerpt of the officer's testimony. In the second note, the jury stated that it was deadlocked and asked the court for guidance on how to resolve the conflict. In response, the court wrote a note instructing the jury to keep deliberating. In its third note to the court, the jury requested another part of the record: "1. We want the record of the police officer's testimony when being questioned by the Prosecutor (not the Defense). Initial and redirect. 2. We want the chart pad that the prosecutor used in closing argument." The court asked the jury to be more specific regarding its first request and informed the jury that the chart was not in evidence. In its fourth and final note, the jury asked the court for "the officer's testimony, when being questioned by the Prosecutor, concerning the eye movement test (1st test performed) on the defendant." The court inquired whether the jury was in disagreement as to the testimony, and the jury responded, "We have an individual (or maybe more) who didn't clearly hear all of the testimony and wants to review it." In response, the court released the following portion of Officer Spradlin's testimony:

3

Q: All of these questions about the horizontal gaze nystagmus test, if she had looked anywhere else, like at cars moving or lights moving or birds flying through the sky, would she have been performing the tests properly?

A: No, ma'am.

Q: Did she keep her eyes on the stimulus you moved back and fourth?

A: Yes, ma'am.

Q: Did she perform at least that part of the test in order to maintain the integrity of the results?

A: Yes, ma'am.

Q: Did you do the tests properly in order to read her results properly?

A: Yes, ma'am.

Q: If somebody has very distinct and obvious nystagmus is it necessary to do each part of the test twice?

A: If it's very obvious when you first do it the very first time, if there is no question that nystagmus has started at maximum deviation, and some people will see it, and it is obvious that is what it's doing. I have done it where I do it one time on this side, and I will go back and do it one time on this side, if it's that obvious.

Q: The manual says you start with the left eye, right?

A: Yes, ma'am.

Q: And you started with her right eye?

A: Yes, ma'am.

Q: In your experience does that affect the performance of the test?

A: No, ma'am.

4

Q: Have you altered your administration of these tests in any way that would change the reliability of the results?

A: No, ma'am.

After deliberating, the jury found appellant guilty of DWI, and the trial court sentenced her to 180 days in jail and imposed a $2,000 fine, with the sentence suspended. The trial court placed appellant on community supervision for twenty-four months. Appellant filed a motion for new trial, which the trial court denied. Appellant appeals the judgment of the trial court.

## DISCUSSION

**The Field Sobriety Manual**

In her first issue, appellant contends that the trial court erred in refusing to allow her to cross-examine Officer Spradlin with a field sobriety test manual because portions of the manual were relevant to a determination of whether Officer Spradlin properly performed the horizontal gaze nystagmus test. *See* Tex. R. Evid. 401, 402.[1] During cross-examination of Officer Spradlin, appellant handed the officer a copy of the U.S. Department of Transportation National Highway Traffic Safety Administration (NHTSA) DWI Detection and Standardized Field Sobriety Test Instructor Manual. Officer Spradlin admitted that the NHTSA manual was reliable authority, and appellant began questioning Officer Spradlin about the horizontal gaze nystagmus test, using the manual as a reference and asking Officer Spradlin to read from it. According to Officer Spradlin's

---

[1] Appellant also contends that the manual constitutes a learned treatise under the rules of evidence. *See* Tex. R. Evid. 803(18). For the sake of argument, we will assume that the field sobriety test manual qualifies as a learned treatise and that a proper predicate had been laid regarding its authority. *See id.*

5

testimony, the horizontal gaze nystagmus field sobriety test is a four-phase test in which an officer asks an individual to follow the movement of a stimulus such as a pen tip with her eyes, while the police officer looks for an involuntary jerking of the eyeball, which is exaggerated by the use of alcohol or drugs. Appellant questioned Officer Spradlin about the speed at which the stimulus should be moved during the test. Officer Spradlin indicated that, in his field sobriety test training class, he was told that a common mistake in administering the test is moving the stimulus too quickly and that he was instructed to move the stimulus slowly. Appellant then questioned Officer Spradlin about his training regarding different types of nystagmus not caused by alcohol use:

> Q. You are also taught about a variety of different types of things that could cause nystagmus in the class, right?
>
> A. Yes, sir.
>
> Q. And you are taught that one non-alcohol related nystagmus is optokinetic nystagmus; is that correct?
>
> A. Yes, sir.
>
> Q. And that can occur from watching things too quickly, that move too quickly?

At this point, the State objected to appellant's line of questioning on relevance grounds:

> PROSECUTION: Your Honor, we are talking about 47 kinds of nystagmus. The optokinetic is a kind with flashing lights, which is not relevant. 47 different kinds of nystagmus are not the kind of nystagmus, and if we want to get into that, this is completely irrelevant; it would be confusing to the jury.

In response, appellant stated:

6

DEFENSE: Judge, the manual says that optokinetic nystagmus, the manual says that as long as the stimulus is moved slowly and smoothly across the field of view, it will prevent optokinetic nystagmus.

The court sustained the State's objection and instructed the jury to disregard appellant's question regarding optokinetic nystagmus. Appellant then asked Officer Spradlin whether moving the stimulus too quickly would interfere with a suspect's performance during the horizontal gaze nystagmus test. Officer Spradlin said that he did not know. Appellant asked Officer Spradlin to reaffirm the authority of the NHTSA manual and directed Officer Spradlin to read a portion of the manual listing examples of optokinetic nystagmus. The State objected:

PROSECUTION: Objection, Your Honor. You have already ruled on this.

DEFENSE: May I show this to you, Your Honor?

THE COURT: I made my ruling. Where are you going?

DEFENSE: Because this manual says he did the test incorrectly –

PROSECUTION: That is not true.

THE COURT: My ruling is to move on to something else.

In response, appellant asked permission to cross-examine with a learned treatise. The court then dismissed the jury and allowed appellant to continue her line of questioning. With no jury present, appellant directed Officer Spradlin to read portions of the NHTSA manual:

7

A. The examples of optokinetic nystagmus include watching scenery while looking out the window of a moving train or watching a rapidly spinning wheel that has alternating lights flashing on it.

Q. Okay. It just says those are examples of optokinetic nystagmus, right?

A. Yes, sir.

Q: It doesn't say that's the only kind of optokinetic nystagmus, correct?

A. Not in that paragraph, no, sir.

Q. Now, read, if you would and in particular, make sure it is loud enough for the Judge to hear what it says here in this paragraph, right there.

A. Point out that during horizontal gaze nystagmus tests, the subject is required to focus the eye on a pen light or pencil or similar object that moves slowly, relatively slowly across the field of view so that optokinetic nystagmus will not occur.

. . .

A. The horizontal gaze nystagmus test will not be influenced by optokinetic nystagmus if administered properly.

In response, the State directed Officer Spradlin to read another paragraph from the manual describing optokinetic nystagmus:

A. Optokinetic nystagmus occurs when the eyes fixate on an object that suddenly moves out of sight or when the eyes watch sharply contrasting moving images.

The State then asserted that optokinetic nystagmus, as described in that paragraph in the manual, was irrelevant to Officer Spradlin's performance of the horizontal gaze nystagmus test:

PROSECUTION: Your Honor, not moving a pen slowly enough does not cause the object to move out of the field of sight and does not cause the eye to watch sharply

8

contrasting images, such as a wheel spinning with black and white images. Such optokinetic nystagmus, done as this officer did it, is irrelevant.

Appellant argued that the jury should make that determination:

DEFENSE: Your Honor, my request would be to let the jury make that decision, and let the prosecutor make that argument and let the prosecutor add this additional information that she thinks and keeps on saying. But I think the jury has a right to hear this and make their own determination. That is my request.

The State responded:

PROSECUTION: Judge, if we are going to go through the entire manual and talk about all 47 kinds of nystagmus and read selective passages that question what the officer did and imply that he was causing some other kind of nystagmus, we will be here until next week.

The court sustained the State's relevance objection and, when the jury returned, instructed the jury to disregard appellant's last line of questioning.

To be admissible, appellant's line of questioning regarding optokinetic nystagmus must have been relevant under Rules 401 and 402. *See* Tex. R. Evid. 401, 402. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* R. 401. In making its relevancy determination, the trial court must determine whether a reasonable person would believe that the particular piece of evidence was helpful in determining the truth or falsity of any fact that was of consequence to the lawsuit. *See id.*; *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.). Once the trial court

9

determines that the evidence is relevant, it must look to rule 402 to determine if the evidence should be admitted. Tex. R. Evid. 402. Rule 402 states that relevant evidence is generally admissible, except as provided by the Constitution, statute, the rules of evidence, or other rules. *Id.* Evidence that is not relevant is inadmissible. *Id.* If the trial court believes that a reasonable person might conclude that the evidence is relevant, then it is bound to admit the evidence. *Montgomery v. State*, 810 S.W.2d 372, 382 (Tex. Crim. App. 1990).

The standard of review for a trial court's admissibility decision is an abuse of discretion standard. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). In applying this standard, we review the trial court's ruling in light of the record before the court at the time the ruling was made, *Khoshayand*, 179 S.W.3d at 784, and will not disturb the ruling absent a showing in the record that the trial court abused its discretion, *Rankin v. State*, 821 S.W.2d 230 (Tex. App.—Houston [14th Dist.] 1991, no pet.). A trial court abuses its discretion when it acts without reference to any guiding rules or principles or acts in an arbitrary or unreasonable manner. *Montgomery*, 810 S.W.2d at 380. We will uphold the trial court's ruling if the court employed the appropriate analysis, *cf. id.*, if the ruling is reasonably supported by the record and is correct under any theory of law applicable to the case, *Khoshayand*, 179 S.W.3d at 784, and if the ruling is within the "zone of reasonable disagreement," *Powell*, 63 S.W.3d at 438.

In her brief, appellant contends that the NHTSA manual discussion of optokinetic nystagmus was relevant to her contention that Officer Spradlin had incorrectly administered the horizontal gaze nystagmus test by moving the stimulus too quickly. If the test was performed incorrectly, she argues, then Officer Spradlin may have erroneously concluded that appellant was intoxicated at the time of arrest.

We agree with appellant that the portion of the NHTSA manual regarding whether optokinetic nystagmus, which is not caused by alcohol consumption, may be caused by watching quickly moving objects was relevant. The excluded portions of the manual specifically caution about the possibility of confusing horizontal gaze nystagmus, which is a sign of intoxication, with optokinetic nystagmus. Officer Spradlin testified that he was trained to perform the field sobriety tests according to the standards set out in the NHTSA manual and that the manual was authoritative and reliable. Further, he testified that he was instructed to move the stimulus slowly when performing the horizontal gaze nystagmus test. Given this, appellant should have been allowed to question Officer Spradlin about his administration of the field sobriety tests to her on the night of her arrest based on the national standards laid out in the manual to determine if imprecise administration of the test led to a result mistakenly assessed as horizontal gaze nystagmus. Further, during cross-examination, appellant directed Officer Spradlin to calculate the minimum amount of time it would take to correctly administer all four phases of the horizontal gaze nystagmus test. Because the time code on the videotape of appellant performing the test showed that Officer Spradlin took less time to administer the entire test than his minimum estimate, appellant contended that the test had been done too quickly to be accurate. A reasonable person might have concluded that the evidence was helpful in determining whether Officer Spradlin correctly performed the horizontal gaze nystagmus test and whether the results of the test indicated appellant was intoxicated. The trial court's decision to exclude the evidence was not based on an appropriate relevancy analysis and was, therefore, arbitrary and an abuse of discretion. *See Montgomery*, 810 S.W.2d at 380.

Having held that the trial court's exclusion of a portion of the NHTSA manual was error, we must next address whether that error was harmful. The exclusion of this evidence falls

11

into the category of non-constitutional error. *See West v. State*, 169 S.W.3d 275, 279-80 (Tex. App.—Forth Worth 2005, pet. ref'd) (generally, erroneous admission or exclusion of evidence is non-constitutional error if court's ruling merely offends rules of evidence). Under Rule 44.2(b), appellate courts must disregard a non-constitutional error unless the error affects an appellant's "substantial rights." Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). In making this determination, the reviewing court must examine the entire record. *Burnett v. State*, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002). Under rule 44.2(b), a conviction should not be reversed when, after examining the record, "the reviewing court has a fair assurance that the error did not influence the jury or had but a slight effect." *McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005).

Although the jury had previously indicated that it was deadlocked and subsequently asked for a portion of Officer Spradlin's testimony regarding his administration of the horizontal gaze nystagmus test, these facts do not mandate a finding that the refusal to allow cross-examination with the NHTSA manual was harmful. The exclusion did not prevent appellant from arguing that the horizontal gaze nystagmus test was improperly administered. Although the trial court halted appellant's cross-examination of Officer Spradlin with regard to the NHTSA manual's discussion of optokinetic nystagmus and the proper speed at which to move the stimulus, Officer Spradlin had previously testified three times that the stimulus should be moved slowly during the test.[2] Based on

---

[2] In direct examination, Officer Spradlin testified that during the third phase of the horizontal gaze nystagmus test, the officer should move the stimulus "a whole lot slower" than in the prior phases of the test. In cross-examination, Officer Spradlin stated that it is important to move the

these three statements, Officer Spradlin's minimum time estimate, and the videotape evidence of the field sobriety tests, appellant was able to argue that Officer Spradlin's administration of the horizontal gaze nystagmus test was flawed. Further, in her closing argument, appellant argued that the horizontal gaze nystagmus test was not administered properly, was subjective, and could not be verified from the videotape.

In addition, Officer Spradlin testified that he performed three field sobriety tests on appellant in addition to the horizontal gaze nystagmus test and that she exhibited signs of intoxication during each test. Officer Spradlin also testified that appellant told him she had consumed two or three drinks on the night of her arrest. Finally, although the breath test was performed more than one hour after appellant was arrested, the results showed she was well over the legal limit, with an alcohol concentration of 0.113.

Given the testimony regarding the horizontal gaze nystagmus test, the evidence oncerning appellant's performance of the other field sobriety tests, the testimony regarding the number of drinks appellant had consumed, and the results of her breath test, we conclude that the exclusion of the evidence in question did not have "a substantial and injurious effect or influence in determining the jury's verdict." *See King*, 953 S.W.2d at 271; Tex. R. App. P. 44.2(b). After reviewing the entire record, we are at least fairly assured that the exclusion did not influence the determination of the jury or had only a slight affect.[3]

---

stimulus slowly during phase four of the test and that he was trained to move the stimulus slowly during phase four of the test. Finally, just before the excluded exchange regarding optokinetic nystagmus, Officer Spradlin testified that during training he was told it was a common mistake to move the stimulus too quickly during the horizontal gaze nystagmus test.

[3] In her brief, appellant asserts that the court's refusal to allow cross-examination of Officer Spradlin with the NHTSA manual rises to the level of constitutional error under Rule 44.2(a), as a

Having concluded that the trial court's exclusion of portions of the NHTSA manual was harmless under Rule 44.2(b), we overrule appellant's first issue. *See* Tex. R. App. P. 44.2(b).

**Challenge for Cause**

In her third issue, appellant contends that the trial court erred in denying her challenge for cause of potential juror T. Howe.

During the initial voir dire, appellant asked if the panel members would "hold it against her" if she did not testify during trial. Several venire members, including Howe, indicated that they would. Upon further questioning by appellant, four potential jurors again stated that they would have a bias against the appellant if she did not take the stand. The trial court granted appellant's challenges for cause of these four individuals. During her individual bench voir dire, appellant did not ask Howe if she would hold it against appellant if she did not testify, and after several questions regarding an unrelated matter, the trial court halted appellant's questioning of Howe.[4] Afterwards, on two occasions, appellant challenged Howe for cause, citing Howe's earlier indication that she would hold the appellant's silence against her. The trial court denied both challenges.

---

denial of her Sixth Amendment right to cross-examination. *See* Tex. R. App. P. 44.2(a). However, the record shows that appellant had ample opportunity to cross-examine Officer Spradlin regarding the speed at which to move the stimulus during the horizontal gaze nystagmus test. Preventing appellant from directing Officer Spradlin to read portions of the NHTSA manual describing optokinetic nystagmus does not constitute a denial of the right to cross-examine.

[4] After the trial, during a motion for new trial hearing, appellant stated that during Howe's individual bench voir dire, she had intended to again ask Howe whether she would hold it against appellant if she did not testify but that she was "cut off" by the court before she could proceed with this line of questioning.

After individual voir dire, appellant requested two additional peremptory strikes, stating, "I disagree with two of the individuals," but did not specifically identify the objectionable jurors. The trial court denied appellant's request for additional peremptory strikes. Appellant then used one of her peremptory strikes to remove Howe from the jury pool. After appellant was convicted, she filed a motion for new trial. At the hearing on the motion, appellant for the first time named Stanley Schnell as an objectionable juror whom she would have struck if she had not used a peremptory strike to remove Howe.

The court of criminal appeals has outlined the steps that must be followed to preserve error with respect to a trial court's denial of a challenge for cause:

> [A]n appellant must: (1) assert a clear and specific challenge for cause; (2) use a peremptory strike on the complained-of veniremember; (3) exhaust his peremptory strikes; (4) request additional peremptory strikes; (5) identify an objectionable juror; and (6) claim that he would have struck the objectionable juror with a peremptory strike if he had one to use.

*Allen v. State*, 108 S.W.3d 281, 282 (Tex. Crim. App. 2003). The court explained that to preserve error, all six steps must be completed in the trial court. *Id.* at 282-83 (waiting until appellate brief to identify objectionable juror who would have been struck is too late to preserve error).

Appellant did not complete all the steps necessary to preserve error. During voir dire, appellant broadly stated that she disagreed with two of the individuals on the jury list, but she did not specifically name Schnell or any other individual until after the trial had ended. Similarly, it was not until the hearing on her motion for new trial that appellant claimed she would have removed Schnell if she had not used a peremptory strike on Howe. Waiting until a motion for new trial hearing to complete steps five and six does not properly preserve error; all six steps must be

15

completed during the original trial. *See id.*; *see also Moreno v. State*, 587 S.W.2d 405, 408 (Tex. Crim. App. 1979) (blanket statement that "other jurors" on jury list are objectionable, without identifying who those jurors are, is not sufficient to preserve error); *Credille v. State*, 925 S.W.2d 112, 115-16 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd ) (jury selection error cannot be preserved in motion for new trial).

Because appellant did not complete all the steps necessary to preserve error, he has waived this issue. *See* Tex. R. App. P. 33.1.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the judgment of conviction.

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear;
    Justice Patterson Not Participating

Affirmed

Filed:   August 25, 2006

Do Not Publish